ARKANSAS CENTRAL RAILROAD COMPANY *v.* MORGAN.

Opinion delivered May 7, 1917.

1. RAILROADS—DUTY TO TRESPASSER ON TRACK.—Appellee, a deaf mute, was injured by being run down by a motor car on defendant's track. *Held,* appellee being a trespasser that the railroad owed him no affirmative duty of care, but that after discovering his peril, it did owe him the duty to exercise the care that an ordinary, careful and prudent man would have exercised under similar circumstances to prevent injuring the appellee.

2. TRIAL—IMPROPER CONDUCT OF JUROR AND COUNSEL—TIME TO OBJECT.—During the trial of a personal injury action, the jury was permitted to separate, under the customary injunctions of the court as to conduct. A juror and one of appellee's counsel were seen to be together and to spend some time in company with each other. *Held,* this conduct was improper, but that a judgment in appellee's favor would not be reversed, where appellant was aware of the misconduct of the parties, but did not bring it to the court's attention until after the verdict was rendered.

Appeal from Logan Circuit Court, Northern District; *James Cochran,* Judge; affirmed.

*Thos. B. Pryor,* for appellant.

1. There was misconduct of certain members of the jury and the attorneys for plaintiff. 62 Ark. 91; 27 Okla. 373; 16 Tex. Civ. App. 127; 11 Ga. 203; 17 *Id.* 364, 414; 7 Phila. 167; 15 Neb. 330; 18 N. W. 73; 23 Neb. 171; 36 N. W. 583; 12 Kans. 539; 51 Ind. 299; 8 Oh. C. C. 244; 45 Fed. 542; 13 Ill. App. 653; 12 *Id.* 531; 2 Idaho, 1022; 34 Ga. 379; 29 Cyc. 803.

2. The court erred in refusing to give peremptory instruction requested by defendant. The evidence shows no liability whatever. 60 Ark. 429; 46 *Id.* 513.

3. The court erred in giving instruction No. 4. It was specifically objected to and conflicts with Nos. 1, 2 and 3, given on the court's own motion. 93 Ark. 140, 578.

4. The court erred in refusing No. 3 asked by defendant on contributory negligence and trespassers. No. 5 as to "due care" was also error. No. 13 requested on "ordinary care" should have been given. There is error also in refusing No. 11 on contributory negligence.

*Robert J. White,* for appellee.

1. There is no reversible error in the alleged misconduct of jurors and attorney. It was harmless and no harm intended. It was not prejudicial. 11 N. E. 250; 29 Cyc. 813; 20 S. W. 1075; 79 Ill. 303; 3 S. W. 854; 75 Mo. 672; 178 S. W. 1167; 96 N. E. 815; 97 *Id.* 80; 86 *Id.* 636; 95 *Id.* 328; 68 *Id.* 69; 53 *Id.* 208; 138 Mass. 79; 58 N. E. 854; 48 *Id.* 234; 40 *Id.* 650; 35 *Id.* 668; 29 *Id.* 219.

2. Defendant certainly was not entitled to the peremptory instruction. 102 Ark. 419; 88 *Id.* 484.

3. Instruction No. 4, given, stated the law and was properly given. 119 Ark. 300; 102 *Id.* 300; 102 *Id.* 421; 46 *Id.* 523; 89 *Id.* 496.

4. Instructions 1, 2 and 7, correctly declare the law. "Due care" is "ordinary care." 65 Ark. 624. Nor is there any error in 5 and 6. 99 Ark. 422.

5. No. 11 asked by defendant was properly refused. Contributory negligence was not a defense. In No. 1 given for plaintiff, declared him a trespasser and guilty of contributory negligence. 99 Ark. 422.

Smith, J. (1) Appellee is a deaf-mute, and sustained a serious injury by being run down by a motor car, operated by appellant's employees. This appeal is prosecuted to reverse the judgment in his favor for $1,500, which he recovered in his suit for damages. The case was tried upon the theory that his presence and peril was discovered by the operatives of the motor car in time to avoid injuring him. In the first instruction given by the court, the jury was told, as a matter of law, that ap-

pellee was a trespasser, and that the railroad company owed him no affirmative duty to take care of him, but that it did owe him the duty, after discovering his perilous position, although he was a trespasser, "to exercise the care that an ordinary, careful and prudent man would have exercised under similar circumstances to prevent injuring plaintiff," and that, if this was not done, to find for him. The railroad company had no right to demand a more favorable declaration of the law.

Appellee testified that the motor car was being operated by a section crew, and that, when he passed them, while they were at work on the track, he informed them, by signs, that he was going to pick blackberries, and put them in buckets he was carrying on his arms, and that he walked on down the track for a distance of about a mile and a half to the point where he was struck by the car. A member of the section gang testified that they understood from appellee's signs, when he passed them, that he was going down the track to pick berries, and that, as the section gang approached appellee, on the motor car, witness's attention was attracted to appellee's presence by the remark of another member of the gang to their foreman, that the man on the track was the deaf and dumb man, and that this member of the crew called to the foreman the second time before he pushed the lever which applied the brakes, but he could not tell whether the brakes were sufficiently applied to reduce the speed of the car, and that the last time he looked at the man, they were 150 yards from him, and were running at the rate of 15 or 20 miles per hour, at which time he called to appellee, and, when he saw they were going to strike appellee, witness jumped from the car, which ran on and knocked appellee down, and ran over him. Instructions asked by appellant told the jury that the operatives of the motor car had the right to proceed on their way without checking the speed of the car until it became apparent to them, in the exercise of ordinary care, that appellee would not

leave the track; and the instructions on this phase of the case were as favorable as appellant had the right to ask.

The evidence on the appellant's behalf was to the effect that as soon as they became aware of appellee's peril, they used all means within the power of the operatives of the car to avoid injuring him. But we think the evidence summarized warranted the jury in finding that the proper degree of care was not used to avoid this injury.

Appellant complains of the action of the court in telling the jury that "the care for his own safety required of plaintiff is the care that a man of ordinary care and prudence, situated as he was, would have used under the circumstances of the plaintiff, and negligence is a lack of such care as above described." The ground of the objection is that it did not exact of appellee the duty to use ordinary care for his own safety, but only to use "the care that a man of ordinary care and prudence, situated as he was, would have used *under the circumstances of the plaintiff.*" In answer to this objection, it may be said that, without reference to the degree of care which appellee should have used for his own safety, it was the duty of the operatives of the car to avoid striking him if they could do so by exercising due care after discovering his peril; and we need not, therefore, consider this instruction.

Having carefully considered the instructions given and refused, it suffices to say that the law was declared, in the instructions given, as favorably to appellant as it could have required; and we proceed to the consideration of the real question in the case. *St. Louis S. W. Ry. Co.* v. *Murphy*, 125 Ark. 507.

(2) This case had been tried at a former term, and a mistrial had resulted. At the trial from which this appeal is prosecuted, Sid White assisted his father, R. J. White, in the trial of the case, and made the opening argument. At 10 P. M., after the argument of counsel, the jury reported that they were unable to agree upon a verdict, whereupon they were permitted to separate after

the usual admonition of the court against talking to any
one about the case or permitting any one to talk to them.
In support of the motion for a new trial, because of im-
proper influence exerted upon the jury by appellee's coun-
sel, J. H. Wright, president of the appellant railroad
company, testified that, as the jurors were leaving the
court room, his attention was called to the fact that Sid
White was closely following J. A. Freeman, a juror, and
that his suspicion was aroused, and that he followed
White and the juror and observed them walking together
in the direction of White's office, and that he watched
them until they disappeared in or around the corner of
the building occupied by White as an office, and that he
requested a Mr. Fernandez to join him in his observa-
tions, and he and Fernandez observed White and the
juror walking down the middle of the street leading a
horse, and White and the juror proceeded down the street
in the direction of White's residence until they passed
out of the view of the observers.  It was also shown,
without denial, that White and the juror went to a lot
near White's office, and got a horse which the juror had
ridden to town, and White and the juror went back to
White's residence, where the juror left his own horse, and
White loaned him an older and a gentler horse, and that
this was done because the juror's horse was young and
not well broken.

. Upon behalf of appellee, it was shown that White
and the juror had been school mates, and long time
friends, and that the courtesy was without significance,
and that the case on trial was not referred to in any man-
ner.  It was shown, also, that no complaint at the conduct
of counsel was made to the court until after the return of
the verdict.

The subject of misconduct of the jury is one which
frequently arises in this country, due largely, no doubt,
to the practice, more or less prevalent in the different
States, of permitting jurors to separate during the prog-
ress of the trial, thereby affording increased opportuni-

ties for the exercise and operation of prejudicial influences. A case which reviews the subject, both upon principle and upon consideration of the authorities, is that of *Garvin* v. *Harrell*, 27 Okla. 373. There, after the jury had been selected and sworn to try the issues in the cause, the successful plaintiff entertained, at dinner, at his expense, three jurors, at a restaurant kept by a fourth juror, and, in reviewing this conduct, the court said: "The fair and impartial jury, duly empaneled, sworn and charged to try the cause and true deliverance make, has been the bulwark of the best system yet devised by man for the determination of controverted questions of fact, and our people are content and feel secure in their persons and property because of their abiding confidence in its integrity. When the unfortunate parties, then, unable to settle their own differences, leave them to the judgment of a court and jury, the result should come to them both untainted by a breath of suspicion that aught else than the law of the land and their evidence was even remotely responsible for the verdict. In this case we may absolve the plaintiff from any intention whatever to corruptly influence the jury by the courtesies which he extended to some of its members, and we may absolve the jurors of a suspicion on our part that their verdict was responsive to aught else than the law and the evidence as delivered by the court and the witnesses; but the defendant evidently does not maintain this view, and he has a right, of which he can not lawfully be deprived, to have the facts of his case determined by a jury upon which the possibility of undue influence has not been exerted. It therefore follows that, for this reason, the motion for a new trial should have been sustained, and its denial was error."

Among numerous other cases there cited is the case of *Springer* v. *State*, 34 Ga. 379. It was there said:

"The honor of the bar and the perfect purity of a jury, alike demand their entire separation, in their personal and social intercourse, whilst trials are progressing. However harmless, in themselves, as was the conduct of

our respected brethren in these cases, we feel ourselves
calld upon, in this and in every case where this separation
is not preserved with the utmost care, to evince, in the
most decisive manner, our purpose to shut up every ave-
nue through which corruption, or the influence of friend-
ship, could possibly make an approach to the jury box.''

The view of the courts in the cases cited comports
with that of this court in the case of *Jetton* v. *Tobey,* 62
Ark. 91, and is not in conflict with our cases of *Bealmear*
v. *State,* 104 Ark. 622, and *St. Louis S. W. Ry. Co.* v. *El-
lenwood,* 123 Ark. 428.

Upon the authority of the cases cited, it may be said
that White's conduct was improper; but we will not re-
verse the judgment on that account, for the reason that,
before the rendition of the verdict, and while the oppor-
tunity yet remained for counsel for appellant to make
complaint of the improper conduct of counsel for appellee
to the court, thereby affording opportunity to inquire
into the incident, and of removing any prejudice which re-
sulted from it, appellant elected to take chances upon the
result of the verdict, and made complaint to the court only
after that verdict had been returned. The purpose of the
rule announced in the above cited cases is to prevent a
litigant from being prejudiced by the improper conduct
of the jury; but the litigant should not seek to derive any
advantage from the occurrence complained of. The liti-
gant should, in fairness, make his complaint to the court
as soon as the information is obtained, so that the court
may inquire and determine whether any improper or
prejudicial influence has been exercised upon the jury, to
the end that the court may remove this prejudice if that
can be done. And if there is to be a mistrial in such
cases, it should come when the prejudicial incident is dis-
covered and the court has determined that the integrity
of the trial has been destroyed. Here the court was given
no opportunity to inquire into the alleged misconduct, nor
to remove any prejudice resulting from it. Having taken
its chance on the verdict of the jury, by failing to speak

when it should have spoken, we will not disturb the finding of the court upholding the integrity of the verdict. A different rule would be applied had the belated complaint to the court shown an act of corruption; but this proof shows only an act of courtesy, which might or might not have influenced the vote of the juror to whom it was extended. And, having failed, as we have stated, to afford the court the opportunity of removing prejudice, if any, when this might have been done, we will not reverse the judgment of the trial court in overruling the motion for a new trial.

Attention is called to the fact that the information in regard to the relation between counsel and the juror, was not known to Mr. Pryor, the attorney for the appellant railway company, who tried the case for it, until after the rendition of the verdict. But this is immaterial, as the information was possessed by the local attorney for the railway company and its president, and it is not essential that every person connected with the trial should have had this knowledge.

It is also urged that neither the local attorney nor the president of the road knew of the loan of the horse until after the rendition of the verdict. But they knew of the intimacy between the plaintiff's attorney and the juror, and they knew that some courtesy was being extended and accepted. They suspected this fact, and verified their suspicions before abandoning their vigil. The nature of the courtesy was not of controlling importance, for it was shown that the Whites had a large number of horses, and that the loan of a horse for a short journey was an act of such frequent occurrence in that neighborhood as to be commonly regarded as a thing of course, something to be expected, and soon to be forgotten. The impropriety consisted in the intimacy and the extension of any courtesy. The judgment is affirmed.