[Civil No. 2062.  Filed June 26, 1923.]

[216 Pac. 246.]

# BLUE BAR TAXICAB & TRANSFER COMPANY, a Corporation, Appellant, v. ALICE E. HUDSPETH, as Guardian of the Person and Estate of WILLIAM C. HUDSPETH, an Incompetent Person, Appellee.

1. LIVERY-STABLE AND GARAGE KEEPERS—RIGHTS OF DEPUTY SHERIFF INJURED WHILE TAXICAB PASSENGER HELD MEASURED BY CONTRACT OF SHERIFF HIRING TAXICABS. — Where a deputy sheriff sued for injuries received by him while riding as a passenger in a taxicab under an agreement for service between the sheriff and the taxicab company, his rights were based on the agreement, and were measured thereby.

2. MASTER AND SERVANT—NEGLIGENCE OF TAXICAB DRIVER NOT IMPUTABLE TO OWNER WHERE PASSENGER INDUCED UNAUTHORIZED USE. The negligence of a taxicab driver, resulting in injury to a deputy sheriff riding as a passenger, was not imputable to the owner where the deputy was riding under an agreement for service between the sheriff and the owner whereby the taxicabs were not to be used outside the city, and the deputy induced the driver to take him on such outside trip.

3. MASTER AND SERVANT—PRESUMPTION THAT DRIVER WAS WITHIN SCOPE OF EMPLOYMENT DESTROYED BY UNDISPUTED EVIDENCE THAT TRIP WAS OUTSIDE OF KNOWN ORDERS AND INDUCED BY PASSENGER. The presumption that the driver of a taxicab was acting within the scope of his employment was overcome by undisputed evidence that the trip outside the city limits during which the passenger was injured was beyond the known orders of the driver, and was induced by the passenger over the driver's objections, and should not have been submitted to the jury.

4. TRIAL—THE LEGAL EFFECT OF UNDISPUTED EVIDENCE IS FOR THE COURT.—The legal effect of undisputed evidence is for the court.

5. MASTER AND SERVANT—EVIDENCE HELD TO WARRANT INSTRUCTION ON NONLIABILITY OF TAXICAB OWNER FOR PASSENGER'S INJURIES DURING UNAUTHORIZED USE OF TAXICAB.—In an action against a taxicab owner for injuries to a passenger during a trip outside the city, evidence *held* to entitle the owner to an instruction that "if the defendant had given instructions to the driver not to drive

See 4 C. J., p. 959; 28 Cyc. 38, 46, 48, 49; 38 Cyc. 1497, 1532.

such taxicab on the country roads, and that the driver requested the occupants not to drive into the country, but to return and obtain a car for such trip, and told them the substance of his employer's instructions, or, if the occupants knew of such instructions, the plaintiff cannot recover."

6. APPEAL AND ERROR—TRIAL—EXAMINATION OF WITNESSES, SHOWING INSURANCE CARRIED BY DEFENDANT IN PERSONAL INJURY SUIT, HELD ERRONEOUS AND REVERSIBLE.—In an action against a taxicab company for injuries to a passenger, questions to witnesses as to payments to plaintiff and for hospital bills by an insurer, and answers indicating that such payments had been made by an insurance agent, and that defendant had paid none of such money, *held* improper, and to constitute reversible error.

APPEAL from a judgment of the Superior Court of the County of Pima. Samuel L. Pattee, Judge. Judgment reversed and cause remanded.

Mr. Richard E. Sloan, Mr. C. R. Holton, Mr. Greig Scott, and Messrs. Kingan, Campbell & Conner, for Appellant.

Messrs. Richey & Richey and Messrs. Moore & Frawley, for Appellee.

LYMAN, J.—One Hudspeth, an incompetent, by his guardian sues Blue Bar Taxicab & Transfer Company on account of injuries said to have been negligently inflicted upon Hudspeth while he was a passenger in a taxicab owned by the defendant, and driven by one of its employees. Hudspeth, at the time this action was begun, and for a year or more next preceding, including the time when the accident occurred, was a deputy sheriff of Pima county. The defendant directed its driver, named Butler, to take one of its cabs, and go to a designated place in the city of Tucson, and get Hudspeth and one other. The driver was instructed not to drive the cab outside of the city of Tucson; that it was an unsafe vehicle for driving upon country roads. Butler picked up Hudspeth and one Colvin and carried them

in his cab to a point near the city limits of Tucson, where they alighted, and after a time returned and directed Butler to drive them out into the country beyond the city limits. Butler told Hudspeth and Colvin that he was not permitted to take the cab outside of the city; that it was contrary to the instructions he had received from his employer; but that he would return to headquarters and get a touring car. This offer was declined. Hudspeth and Colvin then entered the cab and directed the driver to proceed out into the country along a road designated by them. Following the directions of the officers, and because of their supposed authority, Butler drove to a railway station sixteen miles, or thereabouts, outside the city of Tucson, where Colvin was left, and where Butler received further instructions from Colvin and Hudspeth to drive back as rapidly as possible to Tucson with Hudspeth. On the way back another car was met, which crowded Butler off the road, and in attempting to recover the highway the car skidded in the sand, struck a small embankment, and overturned, injuring Hudspeth.

At the time of the accident and prior thereto the defendant furnished conveyances to the sheriff of Pima county under a continuing agreement that taxicabs of the sort used at the time of the accident should not be taken into the country, or outside the city of Tucson. The terms of this agreement were communicated by the sheriff to all his deputies, with the instruction that it was not safe to take taxicabs of this type upon the country roads. With a few well-defined exceptions affecting places near Tucson, defendant never permitted its drivers to take cabs of this sort beyond the city limits, because, among other things, of their light and top-heavy construction, and liability to overturn. Instructions to that effect were given to all their drivers, including Butler.

25 Ariz.—19

Verdict and judgment were against defendant.

The complaint asserts that, as deputy sheriff, Hudspeth was a passenger in this car under a contract by which the car was furnished for the sheriff's official use. The sheriff's agreement with the defendant for the use of cars provided that no taxicab such as was used in this instance should be sent by the defendant, or taken by the sheriff, or his deputies, outside the city of Tucson. Whether the relative rights of the parties to this action be determined by the general agreement between the sheriff and the defendant, or solely by the circumstances surrounding the ordering and using of the car on this particular occasion, the results would probably be the same. No point is made in the argument as to any distinction between the two.

This agreement resulted in a contract of bailment for hire, by the terms of which the particular subject of the bailment involved in this action was to be used in a certain definite way, and within certain specific limitations. The sheriff had the right to use the taxicab within the city of Tucson. He had no right to use it beyond that limit, and if he did use it beyond that limit it was in violation of his contract. Hudspeth by pleading and proof is identified with the sheriff both as to rights and liability. His claim is based upon the contract of hire made with the sheriff; his rights are measured by the terms of that agreement.

The bailee for hire is not permitted to use the subject of bailment for any other purpose than the purpose named in the contract, or for such purpose as may be implied from the contract. Any use different from the use prescribed by the contract would be a misuse of the subject of bailment, and the bailee would thereby become guilty of conversion.

The driver of the taxicab, during the period of its perversion from its use as provided by the agreement,

was not using it at the direction of the owner, but was using it under the direction of Hudspeth; and the negligence of the driver under such conditions cannot be imputed to the owner. By such perversion of use there was involved a hazard not contemplated nor agreed upon by the contract of hiring. Defendant could not be held liable for the negligence of the driver, because the hazard was one it had not agreed to assume. Hudspeth could not claim such liability, because it arose in the course of his own wrongdoing in violating the contract of hire. The driver was not serving the defendant in violating its express order, and in following the direction of plaintiff in violation of the contract of hiring. *Stone* v. *Hills,* 45 Conn. 44, 29 Am. Rep. 635.

In the case of *Fritz* v. *Hockspeier,* 287 Ill. 574, 123 N. E. 51, a car with driver was hired to take passengers to the Forest Home Cemetery, but was used instead to drive to Montrose Cemetery, in a different direction. In the course of the drive, an accident occurred, said to have been due to the negligence of the driver, and one of the occupants of the car injured. The court decided that the negligence of the driver could not be imputed to the owner of the car, because it occurred while the car was being used in a manner not contemplated by the contract of bailment.

The appellant complains because the trial court in its charge to the jury said, among other things:

"Presumptively an employee engaged to drive an omnibus or a truck or a taxicab, or anything of that kind, who is actually driving the taxicab at a given time and place, is acting within the scope of his employment."

That the car was being used in violation of the express agreement between the owner of the car and the sheriff, and that the driver of the car had definitely explained to Hudspeth on this trip that he had

no authority, but on the contrary was expressly forbidden by the owner, to take this car outside the city limits, and that the driver did go outside the city limits, because, as he said, he believed the officers had a right to compel him to do so, and did do so under their express orders, was all uncontradicted, and therefore must be assumed true. The learned judge, having in mind no doubt the case of *Baker* v. *Maseeh,* 20 Ariz. 201, 179 Pac. 53, seemed to regard the presumption arising from ownership of the car and general employment of the driver as so weighty that the question of liability must be submitted to the determination of the jury. That, however, is not the law. This jurisdiction, as well as some others, has adopted, for the purpose of convenience, the rule that ownership of the car at the time of the accident raises a presumption of liability. That presumption is an arbitrary rule of evidence adopted by some courts, based upon observation and experience, and believed to operate for the furtherance of justice. This presumption, says one author, "is rather a frail thing."

"It is unlike an inference that arises upon proof of certain facts, and which is necessarily true if the facts are true. It rests upon the facts that the automobile was owned by the defendant, and that the chauffeur who was operating it was in the general employment of the defendant; neither one or both of which actually tends to prove that the chauffeur was engaged in the owner's business." Berry on Automobiles, par. 1061.

All the facts and circumstances upon which the authority of the driver rested are fully disclosed by the evidence, and are undisputed. The occasion for the presumption no longer existed. It had been superseded by proof of the agreement between the sheriff and the defendant, and the instructions to the driver communicated to Hudspeth. The legal effect of undisputed evidence is for the court to decide.

The parties had stipulated where the cab should be used. Hudspeth knew the driver was without authority to take it to the place of the accident. A servant has no authority as such to change existing legal relations between his master and third persons. *Kalmich* v. *White,* 95 Conn. 568, 111 Atl. 845.

The correctness of such an instruction as this was considered in the case of *Whimster* v. *Holmes,* 177 Mo. App. 130, 164 S. W. 236, in a jurisdiction where the presumption based upon ownership and employment of driver is the same as in this state. The court said:

"The point of objection is that there was evidence showing whether he was acting within the scope of his authority and that when there is evidence tending to show a certain essential in a case, there is no room for application of a presumption, but the matter must be decided on the evidence unaided by a presumption. Applying this statement to this case: If the only evidence introduced had been that a man driving a machine had run plaintiff down and that the machine was defendant's and the man was in his employ as chauffeur, then the presumption that he was within the scope of his employment at the time and place would arise. But as the evidence laid bare the whole affair, showing every detail of what the chauffeur was directed to do and when and how to do it, there is no place for a presumption, and the case should be decided on the facts and inferences drawn from them."

*Tetwiler* v. *Railway Co.,* 242 Mo. 178, 145 S. W. 780; *Mockowik* v. *Railway Co.,* 196 Mo. 550, 94 S. W. 256; *Higgins* v. *Railway Co.,* 197 Mo. 300, 95 S. W. 863.

Appellant says that the trial court also erred in refusing to instruct the jury as a matter of law that:

"If they find that the defendant had given instructions to the driver in charge of the taxicab involved in this action not to drive such taxicab on the country roads, and that the driver of said taxicab requested

the said occupants of said taxicab not to drive into the country but to return and obtain a car for such trip, and told them the substance of his employer's instructions, or if the occupants of said taxicab knew of such instructions, that then and in that event the plaintiff cannot recover in this action."

This instruction under the circumstances, and in light of the evidence in this case, should have been given. The particular facts related in the instruction might not always warrant the conclusion which follows them, but that is immaterial if the facts of this case warranted such a direction. It was sufficient and proper enough to test the liability of the defendant for any negligence of the driver after he had taken the cab outside the city limits.

Leaving out of the equation the express agreement between the sheriff and the defendant, under which it is conceded the cab was furnished at the time of the accident, and considering the problem solely from the standpoint of the driver's authority to take the cab, whether that authority was communicated, as it is admitted it was done, to Hudspeth or not, we must come inevitably to the conclusion that the defendant was not liable:

In the case of *Youngquist* v. *Droese,* 167 Wis. 458, 167 N. W. 736, the driver of a jitney was directed not to go outside of a certain well-defined locality, but in violation of such instruction he took a passenger, Youngquist, to his home, which was outside the prescribed limit. On the way the accident complained of occurred, and the action was based upon the driver's negligence. Relief was denied upon the ground that the driver was not acting within the scope of his duties at the time of the accident.

Some of the elements which counsel for Hudspeth seem to think determine this case in their favor, that is, that the driver was not pursuing his own pleasure or convenience, but was engaged in earning money

for his employer, were all present in the Youngquist case; but the undisputed evidence in both cases is that the driver was clearly and unquestionably doing the very thing he was told not to do, and that he had no authority for driving where the accident occurred. In the Youngquist case, the driver collected a fare from Youngquist. The owner, however, refused to receive it after he learned of the injury to the plaintiff. In the present case, no charge was made for the trip. It does not appear that Youngquist knew of the limitation of the driver's authority. In the present case, Hudspeth not only knew that the driver had no authority to go with the cab into the country, but he used his own authority and persuasion to overcome the express direction of the defendant.

In the case of *Walker* v. *Fuller*, 223 Mass. 566, 112 N. E. 230, the plaintiff, an employee of the defendant, contrary to instructions of the defendant, but by permission of the driver, was riding in one of defendant's automobiles, and was injured. In an action to recover for such injury, the court held that the accident occurred while the driver was acting in known violation of his employer's direction; that the plaintiff was therefore a trespasser and not entitled to recover.

In *Nell* v. *Godstrey*, 90 N. J. L. 709, 101 Atl. 50, the right of recovery was based upon the ignorance of the plaintiff that the driver at the time of the accident was acting in violation of the employer's instructions. In the present instance, the violation of defendant's instructions to the driver was not only known to Hudspeth, but was procured by the active fraud of Hudspeth upon the defendant.

In the course of the direct examination of one of defendant's witnesses, he was asked, referring to some bank checks, this question, "They were delivered to Mr. Hudspeth, were they?" and answered, "One

of them, the agent representing the insurance company, he made the one direct to the Arizona Hospital for $220; $980 was made to Mr. Hudspeth.'' A motion to strike out this answer was denied, counsel for the plaintiff resisting the motion with some colloquy concerning it, in the presence of the jury. The question asked in effect whether certain checks were or were not delivered to Mr. Hudspeth. The first three words of the answer are responsive to the question. The rest of the answer is not responsive, and defendant was entitled to have stricken from the record testimony for which his question did not call; and in view especially of the highly improper character of the statement contained in the answer, it should have been stricken out. Later on, counsel for plaintiff asked the same witness this question, ''And in this settlement, so far as you know, there was never any money of the Blue Bar Taxicab and Transfer Company paid to Mr. Hudspeth?'' An objection was made to this question and sustained by the court.

The effect of these questions, together with the answer of the first question, made the fact known, and impressed upon the jury, that back of defendant's liability stood some sort of insurance. This information was not wholly inadvertent, so far as plaintiff was concerned, nor was it a necessary incident of any legitimate evidence. No instruction was given to the jury to cure the effect of it. The consequence of such information is well known, and is sufficient to require a new trial. It is useless for counsel to talk of the innocuous character of this evidence, when they at the same time, in order to get the information before the jury, are willing to imperil any verdict which might be rendered. All lawyers know the rule in regard to such evidence, and they must not expect the court to establish a rule, and then wink at its violation.

. In view of the conclusions already expressed in this opinion, it is not necessary to inquire into the effect of evidence discovered since the trial.

The judgment is reversed and the cause remanded.

McALISTER, C. J., and ROSS, J., concur.