[Civil No. 3070.   Filed February 24, 1932.]

[8 Pac. (2d) 242.]

VOLNEY M. FIKE and SABINA IRENE FIKE, His Wife, and VOLNEY M. FIKE, Jr., Appellants, v. MARY GRANT, Appellee.

550

Mr. Herman Lewkowitz and Mr. C. H. Young, for Appellants.

Mr. Frank H. Lyman and Mr. Samuel C. Jefferies, for Appellee.

McALISTER, C. J.—Mary Grant brought an action against Volney M. Fike, Sabina Irene Fike and Volney M. Fike, Jr., for damages for injuries suffered by her as a result of an automobile accident which occurred on October 17, 1929, in Phoenix, Arizona. She recovered judgment in the sum of $5,000 and from it the defendants appeal.

The car was being driven at the time by Volney M. Fike, Jr., a young man seventeen years of age and a son of his co-defendants, Volney M. Fike and Sabina Irene Fike. It was alleged and the jury evidently found that the injuries suffered by the plaintiff resulted from the unlawful and excessive rate of speed at which the car was running. The record discloses that the car was the property of Irene Fike, a sister of Volney M. Fike, Jr., but was used part of the time by the parents as lessees in connection with their business at Third and Jefferson Streets, and that on this particular evening, somewhere near 8:30 or 9 o'clock, it was driven away from this place by Volney M. Fike, Jr., but whether on a mission for his parents or for himself the evidence is conflicting. However, in view of the instructions of the court that if he were directed by either of his parents to go on an errand for them, they would be liable, but in case he used the car on business of his own without permission from them, they would not be, the verdict of the jury is conclusive on that proposition and the appeal must be disposed of upon the theory that he was at the time on a mission for his parents.

There are several assignments but none of them attack the finding that the injuries were caused by the negligence of the driver or that he was at the time on an errand for his parents. The principal contention is that the fact that liability insurance was carried on the car was brought to the attention of the jury by the testimony of one of appellee's witnesses and through no fault of appellants and that this constituted error so prejudicial that it requires a reversal of the case. It appears from the testimony of Helen Grant, daughter of appellee, that on the morning following the accident she went alone to appellants' place of business and had a talk with them and that at this point she was asked by her attorney whether she talked about the accident, whereupon the following took place:

"A. Would you like to know what I asked them?

"Q. You may tell all that was said. A. I went for the purpose of asking Mr. and Mrs. Fike—

"Q. Just a minute. Speak a little slower and talk to the jury. A. I went to the Fike's place of business to inquire about the insurance on their car and Mr. and Mrs. Fike—

"Q. Was that all you asked them? A. No."

Nothing more was said by her concerning insurance but she was questioned further relative to other phases of the case and it appears from this testimony that two days after the first visit she called again at appellants' place of business and that while there she and Mrs. Fike had a conversation relative to the car and the purpose for which it was being driven at the time of the accident. At the close of her testimony appellants' counsel moved, in the absence of the jury, that due to the fact that the question of insurance on the car had been brought into the case a mistrial be declared but this was denied, though the testimony of the witness, Helen Grant, as to what was said on her first visit to appellants'

place of business was stricken on their motion and the jury instructed upon its return to give it no consideration whatever, the attorney for appellee especially agreeing thereto. The court made a further effort in its charge to the jury to cure any injury that might have resulted from this testimony. After telling it generally not to travel outside the evidence to determine any facts in the case or anything relative to the damages that might be allowed it directed in the following language particular attention to the matter of insurance:

"There was some evidence which was stricken out in this case as you probably recall, a statement made by Miss Helen Grant, the daughter of the plaintiff; it was stricken out as a voluntary statement by her that she went down to talk to these people about their insurance. That is a question which never should be injected into a case of this kind. There is no evidence in this case that these defendants carried any insurance and that must be eliminated entirely by you in the consideration of this case. I think I may say if there was any insurance in the case it was not carried by these particular defendants so that should be entirely eliminated."

The owner of the car, Irene Fike, it appears from a statement the court made out of the presence of the jury, carried insurance on the car but she was not a party to the action, and the only intimation or suggestion the jury had on this subject was in the testimony of Helen Grant and the implication that might be found in the instruction that there was no evidence in the case that the defendants, Mr. and Mrs. Fike, carried such insurance. However, these two statements, appellants contend, led the jury to believe that there was liability insurance on the car and though carried in the name of a member of the family other than the defendants could and would be used to satisfy any judgment that might be returned

against them. This, of course, was not the legal situation, but due to the fact that the car was owned by one member of the family and used by others much of the time as lessees the jury, in the absence of instructions to the contrary, could very naturally have thought this to be true, and if it did there is no question but that it was error not to grant appellants' motion, because, under the authorities, the injection by the plaintiff of the question of insurance into a case of this character is error that calls for a reversal. Such is the holding of all the courts that have considered the question, and in *Blue Bar Taxicab & Transfer Co.* v. *Hudspeth,* 25 Ariz. 287, 216 Pac. 246, the rule was approved by this court in the following language:

"This information was not wholly inadvertent, so far as plaintiff was concerned, nor was it a necessary incident of any legitimate evidence. No instruction was given to the jury to cure the effect of it. The consequence of such information is well known, and is sufficient to require a new trial. It is useless for counsel to talk of the innocuous character of this evidence, when they at the same time, in order to get the information before the jury, are willing to imperil any verdict which might be rendered. All lawyers know the rule in regard to such evidence, and they must not expect the court to establish a rule, and then wink at its violation."

It is the contention of appellee that the statement of Helen Grant, that she went to the Fikes' place of business to inquire about the insurance on their car, gave the jury no information on that subject, but, if it did, this portion of her answer was not responsive to the question propounded by her counsel and was, therefore, inadvertent and under *Hatchimonji* v. *Homes,* 38 Ariz. 535, 3 Pac. (2d) 271, did not constitute reversible error. In that case the witness was asked whether she had told all that was said in conversations about the accident and she stated in

reply, "I believe I have, only that Mr. Hatchimonji said that he had gone to see the insurance company," and the court held in the following language that this statement, unlike the one in *Blue Bar Taxicab & Transfer Co.* v. *Hudspeth, supra,* was inadvertent:

"The difference in that case and this one is pronounced. Here the reference to insurance by the witness was inadvertent. It was not brought out by direct questioning. No motion was made to strike it, and besides it cannot be determined from the witness' answer 'that back of defendant's liability stood some sort of insurance.' If the facts in the two cases were the same, the rulings would be the same."

This language is applicable to the situation before us since the suggestion of insurance in this case came about in very much the same way it did in that one, but the effect of calling the jury's attention to the fact that the defendant carried liability insurance is so prejudicial to the rights of a defendant in such a proceeding that a fuller consideration of the proposition convinces us that the plaintiff should not be permitted to place this information before the jury and escape the consequences of his action upon the claim that it was inadvertent. To say that a witness for the plaintiff may call the attention of the jury to the fact that the defendant carries liability insurance in reply to a question of general nature, such, for instance, as the following: "What else was said?" "You may tell all that was said," "Relate the conversation between you," or any question the answer to which might include the fact of insurance alone or along with others, and then permit the plaintiff to reap the benefits the disclosing of this information aids in bringing about is not in accord with our understanding of the term "inadvertence" as used in this connection. It was, of course, not true in this case, as the high character of appellee's counsel at once testifies, but it is so easy in this way for one who is not

scrupulous in the observance of the ethics of the profession to place such information before a jury intentionally and then claim inadvertence that it should not be permitted at all, unless it becomes necessary in explanation of facts brought out by the defendant on cross-examination, as was the case in *Arizona Cotton Oil Co.* v. *Thompson,* 30 Ariz. 204, 245 Pac. 673. But even then a witness may not take advantage of the situation and disclose such information voluntarily with the hope that it may be regarded as responsive. All lawyers are aware of the prejudicial effect of such testimony and counsel in practically every case of this character knows before going into the trial of any particular suit, or should know, if the owner of the car carries liability insurance, but whether he does or does not carry it to the knowledge of the plaintiff's attorney, the latter should instruct his witnesses not to mention it and inform them that to do so will render any judgment obtained by the plaintiff subject to attack upon that ground.

But if the testimony relative to insurance, standing alone, was not sufficiently prejudicial to call for reversal, we are of the view that such was its effect when considered in connection with the instruction that "there is no evidence in this case that these defendants carried insurance," but "if there was any insurance in the case it was not carried by these particular defendants," for this was practically equivalent to advising the jury that there was insurance in the case but that it was carried by some other member of the family. If up to that time there was doubt in the minds of the jurors relative to insurance it occurs to us that little, if any, existed afterwards, since this statement could only have confirmed its existence. It is true that the instruction included the statement that there was no evidence that the parents carried insurance and directed that this should be entirely eliminated from the case, but this was hardly

sufficient to render certain that the jurors, undoubtedly believing that some member of the family carried insurance on the car, did not entertain the further view that it could be used to satisfy whatever judgment they might return against the defendants. And to be sure that this belief did not become a factor in their deliberations the instruction, though given in a commendable effort to counteract the effect of a prejudicial statement, should, in the situation then confronting the court, have gone a step further and advised the jurors specifically that insurance carried in the name of a member of the family who was not a party to the suit could under no circumstances be collected and applied to the payment of a judgment against the parents because the insurance company's liability on the policy could arise only when the responsibility of the insured had been established by a judgment against him or her.

There are several other errors assigned but in view of the fact that the case must be heard again it is unnecessary to discuss them.

The judgment is reversed and cause remanded, with directions to grant a new trial.

ROSS and LOCKWOOD, JJ., concur.