238 P.2d 937

**NORTHERN ARIZONA SUPPLY CO. et al. v. STINSON.**

**NORTHERN ARIZONA SUPPLY CO. et al. v. OLSON et al.**

No. 5518.

Supreme Court of Arizona.

Dec. 17, 1951.

Rehearing Denied Jan. 16, 1952.

110

———◆———

McQuatters & Stevenson, of Flagstaff, for appellants.

Cox & Cox, of Phoenix, for Alice Stinson.

Carl Tenney, of Phoenix, for Helen W. Olson et al.

DE CONCINI, Justice.

Helen W. Olson and Robert Olson, wife and husband, filed a complaint in the trial court asking for damages for personal in-

juries suffered by the wife as a result of a collision between a car driven by the wife and one belonging to the Northern Arizona Supply Company driven by H. J. Fryberger, an employee. Helen Olson, as guardian ad litem, also asked for damages for personal injuries suffered by Virginia Cheves and Allen Cheves, her minor children who were in her car at the time of the accident. A passenger in the Olson car, Alice Stinson, also filed a complaint against the company and its employee praying for damages she incurred as a result of injuries occasioned by the accident.

The actions were consolidated for trial and tried to a jury. Liability of the defendants was admitted by stipulation filed with the court, and the only issues to be tried by the jury were the amount of damages that the several plaintiffs suffered by reason of the accident.

On the last afternoon of the trial, a short recess was taken and the record shows that the court was again in session at 4:00 p. m. During this recess one of the jurors sitting in this case engaged D. A. Foil, president of the defendant company, in a conversation. Foil testified under oath that the following is the import of that talk: "We were sitting together in chairs out there, discussing the possibility of him coming up to Show Low, maybe starting a business, and after we got through with that he passed the remark, what he would like to know, was both cars covered by insurance, and I told him I did not know. I

have forgotten the exact words that transpired then. Then I said, 'All companies cover their traveling cars with insurance,' and that is all that transpired."

Insofar as the record shows, the first time that the above was called to the trial court's attention was sometime after 4:35 p. m., since that is when the jury retired to reach a verdict. The jury returned with the verdicts at 5:40 p. m. Sometime during this hour and five minutes, counsel for appellants called the court's attention to the misconduct of the juror and Foil. The record shows the following:

The court: "It has been reported to the Court by the attorneys for the defendants that defendant D. A. Foil had a conversation with a juror named Edgar Bulson, during the trial of this case before it was submitted to the jury,  *  *  *.

"It is further reported to the court that the jury has now arrived at a verdict. It is the intention of the Court to receive the verdict and then receive testimony from D. A. Foil and the juror, Edgar Bulson, under oath as to this conversation for the purpose of consideration of whether or not misconduct was had on the part of said parties and whether or not said parties should be punished for contempt and a mistrial declared.

"If you want any objections, dictate them into the record."

There was no response to this by either side and the court then opened session to receive the verdicts of the jury.

After the court had examined both Foil and Bulson, the appellees then moved for judgments on the verdicts of the jury. At this time counsel for appellants for the first time moved for a mistrial "on the grounds of improper conduct of the juror before the case was submitted to the jury for deliberation." The trial court denied the appellants' motion and directed that judgments on the verdicts be granted. A motion for a new trial was made by the appellants and was denied by the trial court. Appeal to this court then followed.

Appellants present eight assignments of error in their opening brief. Assignments one through four relate to the trial court's action in denying appellants' motions for mistrial and new trial for the reason that the misconduct of the juror was prejudicial and denied the Northern Arizona Supply Company and H. J. Fryberger a fair and impartial trial. Assignments five through eight concern themselves with the award by the jury to each of the four plaintiffs, in that each award "is excessive and not justified by the evidence and is contrary to the law".

The first question to be answered is whether defendants were denied a fair and impartial trial?

The Arizona cases cited by appellants are authority for the proposition that it is improper in a negligence case for personal injuries and property damages to inject the matter of the defendants carrying liability insurance. In all of these cases the exist-

ence of insurance was raised through fault of the plaintiff. These cases are Blue Bar Taxicab & Transfer Co. v. Hudspeth, 25 Ariz. 287, 216 P. 246; Tom Reed Gold Mines Co. v. Morrison, 26 Ariz. 281, 224 P. 822; Fike v. Grant, 39 Ariz. 549, 8 P.2d 242; Consolidated Motors, Inc., v. Ketcham, 49 Ariz. 295, 66 P.2d 246.

■ We further agree with appellants' statement in their opening brief, viz.: "The rule of law provided by these cases is that the injection into the trial of a case of evidence of a defendant's liability insurance coverage is prejudicial and requires a mistrial, new trial, or reversal, as the case may be, *if the defendant is without fault* and the matter is *promptly* called to the Court's attention." (Emphasis ours.)

■ We cannot agree however with appellants that they were without fault. Mr. D. A. Foil, owner and president of the defendant corporation, made the statement to the juror that "All companies cover their traveling cars with insurance." He shouldn't have been talking with a juror during the course of the trial and especially should he not talk about the case in any respects, least of all say that "All companies carry insurance."

In the case of Whitson v. State, 65 Ariz. 395, 181 P.2d 822, 825, this court set aside a verdict of guilty on the grounds that one of the jurors was told of the defendant's bad reputation in the state of his former residence. Quoting from said case: "Had these highly inflammatory and prejudicial statements been made to the jury as a whole there could be no question but what a new trial would have been granted. Does the fact that only one juror was thus contaminated make them innocuous? We think not. The constitutional right to an impartial jury cannot be made to hinge upon the number of jurors thus prejudiced. There is no right more sacred than the right to a fair and impartial trial. There is no wrong more grievous than the negation of that right. Nor can such misconduct be cured by the State's contention that a conviction would have resulted anyway by reason of the strength of the State's case. Although but one ballot was taken by the jury in arriving at its verdict, still that verdict had to be unanimous. It is possible that without the information improperly received, juror Cora Seitz might have voted for acquittal."

The instant case is different in respect to not requiring a unanimous verdict; being a civil case only nine jurors need agree. Regardless of that however, if all the jurors knew about it, by the president and owner of defendant corporation himself telling them on the witness stand or otherwise, it would not excuse the defendant because its own witness brought about the situation which it now seeks to avoid. While we do not excuse the juror for misconduct, yet his actions did not prevent defendants from a fair and impartial trial, but rather if any prejudice arose

it was the fault of the defendant company's president in talking to the juror, and it cannot now be heard to complain.

If a defendant can take advantage of its own misconduct then the plaintiff could never have his case adjudicated until the verdict was satisfactory to the defendant. Such a procedure in judicial administration is untenable.

The Texas Supreme Court, in the case of Finck Cigar Co. v. Campbell, 134 Tex. 250, 133 S.W.2d 759, 761, said: "It is a well settled rule in this jurisdiction that it is error to inform the jury that the defendant in an action for damages for personal injuries is protected by indemnity insurance. * * * But that rule has no application when the defendant, or one of his witnesses, voluntarily brings such information to the jury, and it is not brought through any fault of the plaintiff or his attorneys. * * * were this exception to the general rule not recognized, the defendant would have it within his power to bring about a mistrial in all cases and the plaintiff would be unable to guard against it."

Appellants attempt to avoid their mistake by asking for a new trial because of the defendant Fryberger. H. J. Fryberger was an employee of the defendant company. The same counsel represented both defendants.

Counsel for appellees assert in their brief that during a discussion with the judge in chambers the following took place: "* * * In this discussion in Chambers, when Appellees' attorneys were notified of what had happened, Appellants' attorneys stated that Foil told them briefly of this incident before he, Foil, had taken the witness stand but that they did not get the full and complete story of it until after the evidence was all in. * * *"

The appellants do not deny the foregoing but answer in their reply brief as follows: "We submit that the statement of facts preceding Appellants' Opening Brief is correct; that every statement appearing therein is supported by the record, and that it has been unnecessary to bring in extraneous matter to bolster the statement of facts in order to present a fact situation justifying this appeal.'

██ However, assuming that counsel for appellants did not learn of the incident until the matter had been submitted to the jury, still they did not move for a mistrial or make any objections before the judge received the verdict. Before he received the verdict the judge specifically admonished them as follows: "If you want (to make) any objections, dictate them into the record."

The appellants made no objections.

In this case defendants admitted liability. The only issues were the damages of the plaintiffs. Counsel submitted the case to the jury in the hope no doubt of a small verdict. After considering the verdicts too high they moved for a new trial.

The rule is: "* * * And if there is to be a mistrial in such cases, it should come when the prejudicial incident is discovered and the court has determined that the integrity of the trial has been destroyed. Here the court was given no opportunity to inquire into the alleged misconduct, nor to remove any prejudice resulting from it. Having taken its chance on the verdict of the jury by failing to speak when it should have spoken, we will not disturb the finding of the court, upholding the integrity of the verdict. * * *" Arkansas Cent. Ry. Co. v. Morgan, 129 Ark. 67, 195 S.W. 403, 405.

On the question of granting a new trial for improper conduct of a juror this court said in Jacob v. Miner, 67 Ariz. 109, 191 P.2d 734, 736: "* * * In view of the fact that the verdict was unanimous and the experience and learned trial judge, by denying the motion for a new trial, determined that no prejudice had resulted, we are not disposed to disturb his ruling. Another factor enters into our ruling; i. e. the defendants by their affidavits establish that they knew of the visit of the juror now complained of before the trial of the case was concluded and yet failed to report the same to the court. Evidently they chose to gamble upon any effect the juror's inspection might have on a verdict, and after it was adverse for the first time in their motion for a new trial they apprised the court of the juror's misconduct in their effort to overturn the jury's verdict. Such laxness should not be rewarded. The trial court did not commit prejudicial error or abuse its discretion in denying defendants' motion for a new trial."

The second question to answer, based on the last four assignments of error, is whether the verdicts are excessive?

■ After a careful reading of the transcript of evidence, we believe the evidence sustains the verdicts in this case, to wit:

| | |
|---|---|
| Helen W. Olson | $2,000. |
| Virginia Cheves | 9,500. |
| Allen Cheves | 1,000. |
| Alice Stinson | 5,500. |

Judgment affirmed.

STANFORD, PHELPS and LA PRADE, JJ., concur.

UDALL, Chief Justice (dissenting).

I am of the opinion that the learned trial court abused its discretion in not granting either defendants' motion for a mistrial or for a new trial, hence I am in favor of reversing the judgments with directions to grant a new trial.

It is my view that when the juror Bulson asked the question as to insurance the damage was done and the integrity of the trial was destroyed. The subsequent verdict was thereby vitiated and this irregularity could not be cured no matter what answer Foil might have given. The inference seems inescapable that the juror desired at that time to make (and probably

did later make) some use of the information obtained in the consideration of the facts. See 64 C.J. 1016, Sec. 799. While I do not excuse Foil for his misconduct yet I am not naive enough to believe that he would intentionally disclose the insurance angle—which was so decidedly against his interest—as a predicate for a mistrial later on if the verdict was not satisfactory to them. To me the real culprit in the matter was the offending juror and I cannot agree with the majority that the defendants brought about the situation which they now seek to avoid.

Defendant Fryberger in urging that he, being blameless, was entitled to a new trial or a mistrial is met in this court with the statement that "the same counsel represented both defendants". This brings me to the other point on which I disagree with the majority. The court in effect is saying that both defendants are precluded because of their counsel's failure to promptly move for a mistrial before the verdicts were returned, the implication being that counsel had purposely refrained from making such a motion in order to gamble on a satisfactory verdict. In my opinion this is an unwarranted inference without support in the reporter's transcript, and is indeed surprising to me that the court, to support its decision, would dignify—by incorporating into an opinion—an excerpt from plaintiffs' brief as to what their counsel allege was said in the judge's chambers. This I submit is a patent violation of our rules by going entirely outside the official record.

The fact that the majority relies upon our decision in the case of Jacob v. Miner, supra, merely tends to accentuate our differences. It manifestly appears from the facts in that case that the attorneys deliberately chose to gamble on the verdict by failing to apprize the court of a juror's misconduct of which they were well aware before the trial had concluded, whereas in the instant case, there is not a scintilla of competent evidence in the record that the attorneys knew of the conversation between the juror and Foil until after the case had been submitted to the jury. As I read the transcript, counsel for the defendants were in the act of reporting the misconduct when the bailiff reported the jury had reached a verdict. Whereupon the court announced its intention of first receiving the verdict and then investigating the incident which ultimately resulted in both offenders being held in contempt of court. The court having made up its mind as to the course it intended to pursue there was not much that counsel could do and I think it is unfair to charge them with dereliction of duty in not then and there moving for a mistrial. If in reality such was the situation the trial judge would have quickly sensed it and this would doubtless have formed the principal basis for his denying their motion for mistrial. We are, however, not left in doubt on that score as by its order of January 20, 1951 the court

bottoms its decision solely upon the "offending party" rule.

It is for these reasons that I dissent as it seems to me in this case that a suspicion has been cast upon the fair and impartial administration of justice.