466 P.2d 740

**E. L. JONES CONSTRUCTION CO., an Arizona corporation, Appellant,**

**v.**

**Harold NOLAND, Appellee.**

**Harold NOLAND, Cross-Appellant,**

**v.**

**GENERAL ELECTRIC COMPANY, a New York corporation, Cross-Appellee.**

**No. 9676.**

Supreme Court of Arizona, In Banc.

March 19, 1970.

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears, by Ralph E. Hunsaker, Phoenix, for appellant.

Moore, Romley, Kaplan, Robbins & Green, by Phillip A. Robbins and Craig R. Kepner, Phoenix, for cross-appellee.

Pain & Julian, by Fred J. Pain, Jr., Phoenix, for appellee and cross-appellant.

McFARLAND, Justice.

This is an appeal by E. L. Jones Construction Co., hereinafter referred to as Jones Construction, from a judgment for damages in the sum of $23,500 entered by the Maricopa County Superior Court in favor of the appellee, Harold Noland [referred to as Noland or plaintiff], who is also a cross-appellant against General Electric Company, cross-appellee, hereinafter referred to as G. E., Noland having sued both Jones Construction and G. E. for damages. The Superior Court having directed a verdict in favor of G. E., Noland appeals from this judgment.

Noland instituted this action to recover damages for personal injuries sustained as

a result of a fall on the premises of defendant G. E. Jones Construction was performing work at a G. E. plant in Maricopa County, Arizona. G. E. had employed Jones Construction to construct a consolidated storeroom in its plant. Vern Workings was the supervisor for Jones Construction. The work included the construction of a second floor which was completed at the time of the injury in question. The remaining work included installation of a dumbwaiter between the first and second floors of the building. The second floor was about the size of a football field —70 feet wide and 270 feet long, and was some eighteen feet above the first floor.

Noland was a painter of some thirty years experience, employed at the time of the accident by Kenneth William Lunsford (Bill), a painting and decorating company, a subcontractor of Jones Construction. Noland's employer was engaged in the remodeling work being performed upon the premises owned by G. E. During the course of the remodeling a hole had been left in a newly-constructed floor to accommodate a proposed dumbwaiter. It measured slightly more than $34\frac{1}{2}$ inches by 46 inches, and was protected by a $1\frac{1}{8}$-inch-thick piece of plywood four feet square, which was estimated to weigh some fifty-two pounds. After cutting the hole Mr. Workings covered it with the plywood which he nailed securely to the floor. Later, he removed the board in order to put 9 x 9-inch tile around the hole. The tiling was completed on the afternoon of January 3, 1966. Workings then laid the plywood board loose over the hole without securing it. According to testimony, Workings saw about six persons identified as G. E. employees engaged in work around the board. They were moving stock with relatively heavy equipment. Two of them stood on the board, and Workings told them "not to do that, there is a hole underneath."

There were no signs on the board to indicate that there was a hole underneath it. Mr. Workings left the building between 4:00 p. m. and 4:30 p. m. He testified that the board was in position at the time he left. He testified that protecting the hole was the responsibility of Jones Construction. Noland arrived at the G. E. plant about 3:30 p. m., January 3, reported to the guard office, and, going first to the paint shop outside the plant, he entered the G. E. plant about 4:00 p. m. He walked up the steps to the second floor to see about painting the ducts hanging from the ceiling. From the top of the steps he walked about ten feet looking at the ducts, then turned and stepped on the loose board. The board slipped, and he went down through the hole in the floor. He had last worked at the G. E. plant December 21, 1965, and did not know the hole existed, or see it, nor did he know the plywood covered a hole in the floor. He saw the plywood board, but testified he saw no writing on the board. It looked like a plain plywood board there on the floor.

The first question presented by Jones Construction was whether the mentioning of an insurance company by a witness was prejudicial. The statement which it contends was prejudicial was relayed by Bill Lunsford, a defense witness on cross-examination by counsel for Noland. During the cross-examination the following testimony was given:

"Q I am going to hand you what is marked Plaintiff's Exhibit Number 28 for identification. Do you recognize what that is?

"A Yes.

"Q Mr. Lunsford, that is a copy that was produced by the Jones Company on order of the court, supposedly a statement you made.

"A Right.

"Q To them, is that right?

"A True.

"MR. HUNSAKER: I object on the grounds that he didn't ever make a statement to us at all. He produced it for us but he didn't make it for us.

"THE WITNESS: No, well—

"Q BY MR. PAIN: Is that a statement prepared by you?

"A It's a statement prepared by me—

"Q Did you give that—

"A —not at the request of the insurance company, this type of thing.

"Q Just answer the question. Did you give this statement to the Jones people?

"A I gave the statement to the Jones people, right."

■ This Court has held that in negligence cases the plaintiff must take affirmative precaution in introducing testimony to see that liability insurance carried by defendant is not mentioned. Waid v. Bergschneider, 94 Ariz. 21, 381 P.2d 568; Muehlebach v. Mercer Mortuary and Chapel, Inc., 93 Ariz. 60, 378 P.2d 741; Consolidated Motors, Inc. v. Ketcham, 49 Ariz. 295, 66 P.2d 246; Myers v. Rollette, 6 Ariz.App. 43, 429 P.2d 677. In Muehlebach v. Mercer Mortuary and Chapel, supra, we discussed and summarized the reason for the rule preventing any evidence implicating or suggesting that defendant has liability insurance, in which we said:

> "The general rule in this state has been that, with certain exceptions, any evidence, implication or suggestion that the defendant has liability insurance requires a mistrial or a new trial. See, e. g., Blue Bar Taxicab & Transfer Co. v. Hudspeth, 25 Ariz. 287, 216 P. 246. This has been held to be so even though the disclosure that the defendant has liability insurance is inadvertent. Counsel for plaintiff has been put under the affirmative duty of preventing such disclosure. Consolidated Motors, Inc. v. Ketcham, 49 Ariz. 295, 66 P.2d 246. The reason for the rule has been the assumption that if the jury knows that the defendant has insurance, they will assume that the defendant will not have to pay the judgment personally, and that the jury will award a larger verdict. Consequently, they will ignore the issues of liability and merely decide how much the

insurance company should pay. In former days, this reasoning may have been valid. But more recently, courts have questioned whether the mere mentioning of insurance still has this prejudicial effect.

\* \* \* \* \* \*

"The California Supreme Court refused to apply the rule in a later case, Little v. Superior Court of Orange County, 55 Cal.2d 642, 645, 12 Cal.Rptr. 481, 483, 361 P.2d 13, 15 where plaintiff's counsel, on redirect examination asked *his own witness,* a doctor, if there were any changes between the time that a report had been written and a later time. In his answer, the doctor referred to the 'initial insurance report.' The court said:

> "'Although the courts have condemned the action of an attorney who intentionally brings the fact of insurance before a jury, the condemnation does not extend to cases where the information is disclosed incidentally during an attempt to prove other facts or where the record does not show that the particular answer was sought or anticipated.'

"At the very least, this case stands for the proposition that the mere mention of defendants' liability insurance is not prejudicial.

\* \* \* \* \* \*

"Now, these judicial reminders to lawyers and trial judges about what really goes on in the world do not, of course, make the issue of liability insurance any more *relevant* in the run-of-the-mine automobile accident case. Such a case must not be tried on the basis of whether and how much liability insurance the defendant has. Usually an objection to a question as to the existence of liability insurance should be sustained. But it should be sustained on the basis of relevancy, *not* prejudice. Most of the time the existence of insurance just has nothing to do with the case. What we are reminded of is that the prejudicial content of a reference to liability insur-

ance is largely a thing of the past. And it has, in part, been made a thing of the past by the expenditure of vast sums of money by insurance companies to educate prospective jurors of the claimed relation between large verdicts and insurance rates.

"There will be, of course, situations where the issue of insurance is injected into a case for a prejudicial purpose or where its discussion is of such a nature as to be prejudicial. In such a situation, a trial judge must grant a mistrial or a new trial. But he must not allow the bare mention of the word 'insurance' to call forth the conditioned response—'mistrial.' He must truly use his discretion."

Even in an earlier case, Dunipace v. Martin, 73 Ariz. 415, 242 P.2d 543, we held:

"The matter of calling to the jury's attention that defendant may carry insurance covering him for liability for his negligence is not new to this court. See: Blue Bar Taxi Co. v. Hudspeth, 25 Ariz. 287, 216 P. 246; Butane Corp. v. Kirby, 66 Ariz. 272, 184 P.2d 325; Consolidated Motors v. Ketcham, 49 Ariz. 295, 66 P.2d 246; Fike v. Grout, 39 Ariz. 549, 8 P.2d 242; and Arizona Cotton Oil Co. v. Thompson, 30 Ariz. 204, 245 P. 673. In those cases it was held the admission of such evidence before a jury was reversible error. The exception of course is, where the defendant himself causes such information to come before the jury. Northern Ariz. Supply Co. v. Stinson, 73 Ariz. 109, 238 P.2d 937."

Also, in the case referred to in Dunipace, supra, Northern Arizona Supply Co. v. Stinson, 73 Ariz. 109, 238 P.2d 937, we said:

"We further agree with appellants' statement in their opening brief, viz.: 'The rule of law provided by these cases is that the injection into the trial of a case of evidence of a defendant's liability insurance coverage is prejudicial and requires a mistrial, new trial, or reversal, as the case may be, *if the defendant is without fault* and the matter is *promptly* called to the Court's attention.' (Emphasis ours.)"

In the instant case, the witness was the defendant's witness. Plaintiff's counsel had asked the question:

"Mr. Lunsford, that is a copy that was produced by the Jones Company on order of the court, supposedly a statement you made."

The answer was in the affirmative. Defendant's counsel then made the following objection:

"I object on the grounds that he didn't ever make a statement to us at all. He produced it for us but he didn't make it for us."

This statement was really in the form of testimony by defendant's counsel. The plaintiff's counsel ignored the question, but it evidently caused him to pursue a little different line, asking if it were a statement prepared by him, and, upon receiving an affirmative answer, he asked: "Did you give that—." Counsel was interrupted in his questioning, and the witness voluntarily stated that the statement was prepared "not at the request of the insurance company, this type of thing." The counsel for plaintiff admonished him, since he asked the question: " * * * Did you give this statement to the Jones people?" He then answered in the affirmative.

Under this state of the record it is clear plaintiff's counsel had no intention of injecting insurance into the record, nor did the answer require a reference to insurance. His statement was to the effect that he did not give it at the request of the insurance company. This answer did not refer to the defendant's insurance company. A contrary conclusion is just as reasonable. It is even more reasonable in that he stated that he did not give it at the request of the insurance company. He could have been referring to an insurance company of the other defendant, G. E. Under these circumstances, the mention of the word "insurance" by a witness of the

defendant Jones Construction was not prejudicial error. The duty, if any, was upon Jones Construction to request its witness to guard against mentioning insurance. Muehlebach v. Mercer Mortuary and Chapel, Inc., supra.

▊ The next question presented by Jones Construction pertains to the movement on the courtroom floor by plaintiff's attorney of a piece of plywood of the size and shape of that which covered the hole in the floor of the G. E. plant, the plywood having been admitted for demonstration purposes only. The colloquy which occurred was as follows:

"MR. PAIN: This piece of plywood, at this time I'd like to have this marked into evidence for demonstrative purposes only.

"THE COURT: Do you have any objection?

"MR. HUNSAKER: If this is strictly used for demonstrative purposes of the plywood's size and shape I have no objection.

"THE COURT: Mr. Robbins?

"MR. ROBBINS: No objection.

"THE COURT: What number is that?

"MR. PAIN: Seven.

"THE COURT: What has been marked as plaintiff's seven for identification is admitted in evidence as Plaintiff's Exhibit No. 7 for demonstrative purposes only.

"This is not the plywood that was involved on the job site? This is a piece like it?

"THE WITNESS: A piece like this." The record shows further proceedings:

"Q [BY MR. PAIN] All right. And when you were talking about being heavy to lift you are talking about lifting it like that, aren't you?

"A Yes.

"Q You are not talking about moving it sideways, are you?

"MR. HUNSAKER: Your Honor, I object to this. There is no qualification as to whether this man knows anything about the coefficient of friction or any other qualification as an expert. This is a question for an expert.

"THE COURT: Sustained.

"MR. PAIN: Where can I put this?

"MR. HUNSAKER: May I approach the bench for a moment, please?

"THE COURT: Where you put it, that's your problem.

"MR. ROBBINS: Put legs on it and make a table of it."

Thereafter the counsel for Jones Construction moved for a mistrial on the grounds that the plywood had been kicked by plaintiff's attorney. Plaintiff's attorney replied:

"I wouldn't say kicked, but it was moved, there was no attempt to pick it up or lift it or anything like that, and that is for cross examination—"

He said he may have pushed it a little bit, and, in his argument to the court he stated he should be allowed to show the effect of moving a piece of plywood five inches. The court stated that it did not see the plywood moved. The record does not show whether the jury saw it moved on the floor, or how difficult it was to move it. Jones Construction had stipulated that it might be admitted for demonstrative purposes. We are, therefore, confronted with the question of whether the movement on the floor by an attorney of an exhibit admitted in evidence for those purposes was prejudicial error. Jones Construction contends that the witness would have had to be qualified as an expert with respect to the coefficient of friction and a careful foundation laid before such a demonstration could be undertaken. Jones cites Ong v. Pacific Finance Corp. of California, 70 Ariz. 426, 222 P.2d 801, as supporting its position. However, in Ong the question was whether the demonstration should have been allowed. That was also a negligence case where plaintiff contended that the accident resulted from the negligent use of wax on the floor. Under the facts of that case—which were entirely different from

those in the instant case—this Court held it was not proper to demonstrate the effect of placing wax on the floor.

■ Jones Construction also cited Goodman v. Carson, 84 Ariz. 177, 325 P.2d 819, as supporting its position that the witness would have to qualify as an expert. Here, also, the facts are very different from those in the instant case. That was a case that involved expert testimony as to the cause of an automobile accident. The evidence was in regard to plaintiff's testimony based exclusively upon experiments by plaintiff and his attorney shortly before the trial. Plaintiff did not qualify as an expert to give such testimony. In the instant case the witness was the defendant's witness. The matter complained of was not testimony, but the plaintiff's counsel's movement of the board which had been admitted for demonstrative purposes. However, there was no testimony to show how much effort it took to move the board. The trial court is vested with great discretion in the conduct and control of a trial. This also goes to the question of whether to admonish a jury to disregard that which might be considered improper in the courtroom. Mahoney v. Frost, 101 Ariz. 344, 419 P.2d 523.

"The granting or denying of a new trial on the ground that the conduct of counsel before a jury deprived the defendant of a fair trial is a matter within the sound discretion of the trial court. Waid v. Bergschneider, 94 Ariz. 21, 381 P.2d 568 (1963). By denying the motion the Court held that the conduct complained of was not so prejudicial, if indeed it was prejudicial at all, as to warrant a new trial. Bruno v. San Xavier Rock and Sand Co., 76 Ariz. 250, 263 P.2d 308 (1953); Schmerfeld v. Hendry, 74 Ariz. 159, 245 P.2d 420 (1952). Because the trial court had the whole picture before it, it was better qualified to pass on the question than are we. We stated in Selaster v. Simmons, 39 Ariz. 432, 439, 7 P.2d 258, 260 (1932):

" 'The supervision of trials is committed to the trial court, and in matters involving the conduct of counsel, as well as other trial matters, unless it clearly appears that some prejudice has resulted, we think we should defer to the decision and judgment of the trial court. That court had the whole picture before it and was better qualified to pass on the question, and having done so, by denial of the motion for new trial, we accept its decision and judgment.'

"The conduct complained of is to be severely condemned as a departure from the best professional standards. Nevertheless, in this case we cannot find that it was so prejudicial that the trial court abused its discretion in denying a motion for new trial."

See also Higgins v. Arizona Savings and Loan Association, 90 Ariz. 55, 69, 365 P.2d 476.

The question is whether counsel improperly moved the board, and, if so, whether it was prejudicial error. It was determined by the trial court, in denying the motion for mistrial, that it was not prejudicial error.

■ An appellate court will defer to the trial court's ruling as to misconduct of counsel unless it clearly shows the court has abused its discretion. We do not feel that the record in the instant case justifies a holding that the court abused its discretion in denying the motion for a mistrial.

■ Jones Construction next contends that sufficient evidence of proximate cause is lacking, and that the court should have instructed the jury that certain facts had developed to prevent reasonable inference, and that contradictory evidence having been introduced in the case any inference had vanished and no longer existed. We have held that on appeal we will view the evidence on the issue of negligence in a light most favorable to the party who prevails in the trial. Shell Oil Company v. Collar, 99 Ariz. 154, 407 P.2d 380; Sax v. Kopelman, 96 Ariz. 394, 396 P.2d 17.

All that is required in negligence cases is for the plaintiff to present probable facts from which negligence and causal relations may be reasonably inferred. Atchison, Topeka & Santa Fe Ry. Co. v. Hicks, 64 Ariz. 15, 165 P.2d 167; Apache Railway Co. v. Shumway, 62 Ariz. 359, 158 P.2d 142.

Jones Construction contends that the court erred in not giving intervening-cause instructions. An intervening cause is one classified as an independent cause which steps between the original wrongful acts or omissions of the defendant and the injury to plaintiff, and alters the natural and normal sequence of events and thereby produces a result which would not have otherwise occurred. It is a cause which, by its nature, becomes the proximate cause of the injury. In order to justify an instruction on an intervening cause it must be a cause which could not have been reasonably foreseen or anticipated by defendant. Lyric Amusement Co. v. Jeffries, 58 Ariz. 381, 120 P.2d 417; City of Phoenix v. Schroeder, 1 Ariz.App. 510, 405 P.2d 301. The evidence in the instant case shows that Jones Construction recognized the danger of leaving a hole of this size—32 by 44 inches—covered only by a plywood board 48 by 48 inches without having it secured. The plywood was first nailed down for "safety" purposes. The board being only 48 x 48 inches, there was only a 2-inch lap on two sides if it were squarely over the hole of 44 by 32 inches. Mr. Workings actually saw workmen around the loose board moving heavy equipment. He saw two people standing on the loose board. He told them not to do that. "There is a hole underneath," he told them. He then left work, knowing that painters would be coming on the second floor that evening. The evidence also shows that it could have been secured by placing "cleats" on it which could have made it hard to move. The defendant does not point out any evidence to show that the board was moved by a third party after it was placed over the hole by Jones Construction workers. The evidence does show there were G. E. workers around, but to say that they moved it is mere conjecture. The Jones Construction employee, Jerome Konick, stated that he saw it was over the hole at a time just before plaintiff came on to work. You could just as reasonably extend the conjecture to a Jones Construction employee leaving the plywood board on edge instead of placing it squarely over the opening, and that in such a way that it could have even been placed over the opening on one side, but so nearly the edge on another that a slight push would have made it dangerous.

An intervening cause based upon conjecture does not justify an instruction on intervening cause. The testimony of Noland was that he had no knowledge of the opening before he fell through it; that he walked up the steps and turned north; that he was looking at the ducts to determine what materials would be needed to do the work. He then figured out what he would have to have, and started back to bring a stepladder and other material. He testified:

> "Then when I started, I made a turn left, when I made my turn left I stepped on this board, the board slipped and I went down through this hole."

He said that he saw no signs on the plywood board to indicate there was a hole in the floor.

We hold under the facts of the instant case the court did not err in refusing to instruct the jury on intervening cause; also on the instruction in regard to the contradiction of an inference. Noland presented probable facts from which negligence could be reasonably inferred.

Jones Construction next raised the question of the sufficiency of the instruction on contributory negligence. The court properly instructed the jury that if both parties were negligent it was immaterial as to who was more negligent. The instruction meets the requirements of a contributory negligence instruction as set forth in Mantovani v. Green, 90 Ariz. 376, 368 P.2d 448, which was cited by Jones Construction.

The complaint that the court erred in refusing to give the instruction of defendant on the exercise of ordinary care is not well taken, for the reason that ordinary care was properly defined in other instructions.

## CROSS-APPELLANT'S APPEAL

Noland appeals from a judgment in favor of defendant General Electric (hereinafter referred to as G. E.) and from the order denying the motion for a new trial. Noland instituted his action against both Jones Construction and G. E. The trial court directed a verdict for G. E.

Noland contends the order directing a verdict in favor of G. E. was error, in that G. E. knew the hole on the second floor was covered by an unmarked loose board, and knew that this was a hidden dangerous condition to its invitees; yet it negligently failed to take steps necessary to protect them, and that this negligence proximately caused plaintiff's injury.

G. E. and Jones Construction had entered into a written contract for the work to be performed by Jones Construction. We have held many times that a motion for a directed verdict admits the truth of whatever competent evidence the opposing party has introduced, including all inferences that can be reasonably drawn therefrom, and requires that the evidence be interpreted most strongly against the moving party, and in light more favorable to the opposing party. Figueroa v. Majors, 85 Ariz. 345, 338 P.2d 803; G. Matsumato v. Arizona Sand and Rock Company, 80 Ariz. 232, 295 P.2d 850, 56 A.L.R.2d 1385.

We have held that there were sufficient facts in the instant case to submit the question of negligence to the jury. Therefore, the answer to the question as to whether the case against G. E. should have been submitted to the jury depends upon whether there was liability under the contract between G. E. and Jones Construction for injury received from negligence by an employee of an independent contractor, Jones Construction. As a general rule the owner is not liable for the negligence of an independent contractor; however, we have recognized certain definite exceptions to this rule. S. A. Gerrard v. Fricker, 42 Ariz. 503, 27 P.2d 678; Welker v. Kennecott Copper Company, 1 Ariz.App. 395, 403 P.2d 330. For Noland to recover—being an employee of an independent contractor—he must come within one of the exceptions to this general rule.

There is a conflict in the authorities in regard to the duties pertaining to inherent dangerous work and/or work from which it is probable that there will be injuries unless precautions are taken; one line of authorities holding that these duties apply to employees of an independent contractor. The other, which appears to be the weight of authority, holds the contrary. Welker v. Kennecott Copper Company, supra; Harper and James, Law of Torts, pp. 1408–1409. We feel that a safe rule to follow is that set forth in Epperly v. City of Seattle, 65 Wash.2d 777, 399 P.2d 591, where the court, after discussing the various priorities on this subject, stated:

"We have examined the contract provisions and, in each case, it seems to us that the right of inspection or the right of supervision which is set forth is for the benefit of the city to insure that it receives the product which it desires and within the time limit specified for the completion of the work. Nothing in the contract reserves to the city the right to exercise day to day control over the manner in which the details of the work are performed.

"We see nothing an [sic] any provision of the contract which imposes a duty upon the city with respect to the workmen who are engaged by the independent contractor and particularly we see nothing by which the city undertakes to furnish any portion of the facility which failed.

"The retention of the right to inspect and supervise to insure the proper completion of the contract does not vitiate the independent contractor relationship. Fardig v. Reynolds, 55 Wash.2d 540, 348 P.2d

661; Larson v. American Bridge Co., 40 Wash. 224, 82 P. 294; Engler v. Seattle, [40 Wash. 72, 82 P. 136] supra.

"We hold, therefore, that the contract created no peculiar duties to furnish a safe place to work, apart from that imposed upon the owner by the common law.

"The plaintiff must recover, if she recovers at all, by reason of the city's breach of its common law duty to furnish a safe place to work.

"The general rule is that the owner of premises owes to the servant of the independent contractor employed to perform work on his premises the duty to avoid endangering him by his own negligence or affirmative act, but owes no duty to protect him from the negligence of his own master. Murk v. Aronsen, 57 Wash.2d 785, 359 P.2d 816; Campbell v. Jones, 60 Wash. 265, 110 P. 1083. See Seattle Aerie No. 1 of the Fraternal Order of Eagles v. Commissioner of Unemployment Compensation & Placement, 23 Wash.2d 167, 160 P.2d 614, 163 P.2d 921.

"The common law duty of the owner to furnish a safe place to work is succinctly stated in 2 Shearman & Redfield on Negligence (1941 ed.) § 279, p. 689;

" 'But the common-law duty to furnish a safe place to work, even as extended by statute to include the tools and appliances without which the place to work would be incomplete for the purpose intended, refers to the owner's plant and not to the contractor's equipment. * * " ' * * * The law requiring an owner to keep the place reasonably safe for a contractor and his subcontractors does not apply where the work itself is of an unsafe nature or the defects are due to the imperfect and negligent work of the contractor himself.'

"This limitation upon the duty is recognized by Gibilterra v. Rosemawr Homes, Inc., 19 N.J. 166, 115 A.2d 553; Allen v. Texas Electric Service Co., 350 S.W.2d 866 (Texas Civ.App.1961); Weber v.

City of Hurley, 13 Wis.2d 560, 109 N.W. 2d 65.

"Although the owner is under a duty to furnish reasonable protection against hidden dangers known, or which ought to be known to him and not to the contractor or his servants, this duty extends only to latent dangers which the contractor or his servants could not reasonably have discovered and of which the owner knew or should have known. Deaton v. Board of Trustees of Elon College, 226 N.C. 433, 38 S.E.2d 561; Wellman v. East Ohio Gas Co., 160 Ohio St. 103, 113 N.E. 2d 629.

"It is argued that a duty arises because the decedent was an invitee. There can be no question but that this was his status. Meyers v. Syndicate Heat & Power Co., 47 Wash. 48, 91 P. 549. However, his status as an invitee does not impose upon the city any duty to protect him from the negligent acts of his employer and the plaintiff cites no authority which supports the imposition of such a duty.

\*   \*   \*   \*   \*   ♠

"In the case at bar, the city did not supervise the activities of the workmen, did not furnish the appliance which failed and it did nothing affirmatively to increase the risk. The premises were safe when turned over to the contractor and knowledge concerning the hazard which arose thereafter was as available to the contractor as to the city. The city had no superior knowledge or superior means of acquiring it.

"Under these circumstances, we hold that the city's duty was discharged. It had no duty arising either from the contract or from common law to inspect the contractor's facilities to protect the contractor's workmen from hazards incident to their use, and, therefore, the plaintiff must obtain her relief within the framework of the Industrial Insurance Law."

In the instant case, Noland contends that G. E. had a duty to warn him of a hidden danger—namely, the hole in the

floor which was not adequately protected. Noland contends that, under the facts of the case and certain provisions in the contract which he stated were applicable, G. E. assumed this duty under the contract. G. E. retained the right to inspect and approve the work; the right to program the work; the right to require Jones to work overtime when the work fell behind schedule; and the right to change or require additional work. The contract further provided that the contractor should furnish all equipment. G. E. contends these provisions did not make it liable for Jones Construction's negligence.

It is not contended that G. E. did not turn over safe premises to the contractor without hidden and/or concealed dangers. The opening in the floor was made after G. E. turned the premises over to the contractor, Jones Construction. 57 C.J.S. Master and Servant § 590 b at pp. 361–362, sets forth the general rule in regard to the acceptance of work inherently dangerous, as follows:

"The exception does not apply where the work in question or the instrumentality for doing it is not inherently dangerous and, therefore, the facts do not bring the case within the exception. Where danger is not naturally expected to result in the use of a substance or instrumentality, it cannot be said to be inherently dangerous and the owner is not liable for injuries caused by the negligent use thereof by an independent contractor. However, whether work of a given character is to be regarded as 'necessarily,' or 'inherently,' or 'intrinsically' dangerous, or its performance 'attended with danger to others,' within the meaning of such terms when used in this connection, is often a matter as to which different opinions may be entertained, and the courts have found no rule of universal application by which they may abstractly draw a line of classification in every case between work which is inherently dangerous and that which is not. The question is dependent on the facts of each case; and important factors to be understood and considered are the contemplated conditions under which the work is to be done and the known circumstances attending it. The proper test, it has been said, is whether danger inheres in the performance of the work; and it is sufficient if there is a recognizable and substantial danger inherent in the work, even though a major hazard is not involved. The test is not whether a man of ordinary prudence would have anticipated that the injury would have ensued from the work, nor can mere liability to injury from doing the work be the test, since injuries may happen in any undertaking and many are attended with great danger if carelessly managed, although with proper care they are not specially hazardous."

And while Newman of G. E. knew of the hole in the floor it was not a hidden danger from the contractor. The contractor Jones Construction was the one who made the hole. Noland does not, in his brief, state that Newman knew personally that Noland was coming on the job to work. He merely states that:

"Mr. Newman had seen painters such as Noland working, knew that contractors were working on the second floor, and knew that these contractors worked at night."

The provisions of the contract in the instant case permitting inspection and the others enumerated by Noland do not reserve to G. E. the right to exercise day-by-day control over the manner in which the details of the work are performed, and do not vitiate the independent contractor relationship. We hold that under these facts there was no duty upon G. E. to protect Noland from the negligent acts of the Contractor Jones Construction with whom his employer had a subcontract.

Therefore, the court did not err in directing a verdict against Noland in favor of G. E. Judgment affirmed.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and UDALL and HAYS, JJ., concur.