474 P.2d 453

Mary S. LIVINGSTON, as surviving spouse of Leroy H. Livingston, deceased, Appellant,

v.

CITIZEN'S UTILITY, INC., a corporation, Appellee.

No. 2 CA–CIV 729.

Court of Appeals of Arizona, Division 2.

Sept. 11, 1970.

Review Granted Nov. 24, 1970.

Rees, Estes & Browning by Paul G. Rees, Jr., Tucson, for appellant.

Gaynor K. Stover, Tucson, for appellee.

KRUCKER, Judge.

Plaintiff, Mary Livingston, sued defendant, Citizen's Utility, for the wrongful death of her husband. The trial court granted summary judgment for defendant on unspecific grounds and plaintiff appeals.

Construing the facts in a light most favorable to the party opposing the motion, plaintiff herein, they are as follow. Defendant is a public utility. In August, 1965, a violent storm downed a section of defendant's transmission lines near Nogales. The utility company orally contracted with Dykes Electric to do the line repair work. Plaintiff's deceased husband was one of Dykes' four-man crew sent with gear to repair the damage. It was while on this job that the deceased contacted a hot wire and died. Mrs. Livingston applied for and was granted workmen's compensation for the death of her husband by virtue of his being an employee of Dykes. She then

sued Citizen's Utility for its negligence in failing to exercise proper care and supervision over the entire job.

At the hearing on the motion for summary judgment, plaintiff and defendant both stipulated to the following facts:

(1) That the deceased was a member of the Dykes' crew.

(2) That deceased was paid by Dykes.

(3) That Dykes had complied with the Workmen's Compensation Act.

(4) That Citizen's had complied with the Workmen's Compensation Act.

(5) That the repair work was part of Citizen's trade.

(6) That Dykes furnished equipment and crew to Citizen's for the job in question.

(7) That a storm downed the power lines.

(8) That Citizen's equipment and crew were also on the job.

On appeal, plaintiff raises the following questions for review:

"1. Was the deceased, Mr. Livingston, a 'statutory employee' within the terms of section 23–902B, A.R.S., under the facts presented to the lower court on motion for summary judgment; and if so, is this a valid legal defense to an action by an employee of a contractor against the owner of the facilities where said employee is fatally injured?

2. If the deceased, or his heirs, cannot bring a common law negligence action against appellee because of section 23–902B, A.R.S., is the application of said section to this action a violation of the Arizona Constitution, Article 2, section 31, and the contract clauses of the Arizona and United States Constitutions?

3. Does appellant have a claim against the appellee under the sections of the Restatement of Torts pertaining to a landowners' or contractors' liability, con-

trary to the opinion in Welker v. Kennecott Copper Co., 1 Ariz.App. 395, 403 P.2d 330?

4. Did the trial court err in granting summary judgment in favor of appellee and against appellant for the reasons set forth in the various questions outlined above?"

We believe issues one and three are dispositive of this appeal.

The Arizona statutes outline when an employee can receive Workmen's Compensation. A.R.S. § 23–1021 provides that employees injured or killed by accidents arising out of and in the course of their employment shall be entitled to compensation. A.R.S. § 23–902 subsec. A defines an employer generally as one who employs three or more persons in the same business. Subsection C also defines an independent contractor as an employer. Subsection B defines an employee as one over whom an employer has retained supervision and control. And A.R.S. § 23–906 subsec. A provides that employers who comply with the statutory provisions are not liable in tort, unless the employee rejects the Act. Consequently, A.R.S. § 23–1024, as amended, provides that when an employee elects to sue or to take compensation, he waives the opposite choice. This is also true if the alleged negligent party is a third party not in the same employ. If the employee takes compensation the Commission succeeds to his right to sue. A.R.S. § 23–1023.

In the instant case, defendant is the employer of the independent contractor and plaintiff's decedent the independent contractor's employee. Plaintiff has received Workmen's Compensation by virtue of decedent's employment with the independent contractor. Plaintiff now seeks to sue defendant on the grounds as generally found in the Restatement (Second) of Torts §§ 414 and 344.

Consequently, the first question reduces down to the following: Is an "employee" of an independent contractor, within the Act's definition, who receives compensation

by virtue of his employment with an "employer" within the terms of the Act, foreclosed from suing in tort a different "employer" under the Act, his independent contractor's employer?

In the case at bar, defendant, as well as Dykes Electric, fits the statutory definition of an "employer". Both parties likewise concede that defendant has contributed to the fund and fully complied with its provisions. However, we believe that A.R.S. § 23–902 subsec. B makes it essential that an employer share an employer-employee relationship in order for him to either be immune from suit or the one through whom an employee seeks compensation. This relationship exists only if supervision or control is retained and the work is a part of the trade of the employer. And we believe that A.R.S. § 23–902 subsec. C provides that when an employee works for one who is defined as an independent contractor, that independent contractor is his employer as to the job. In the instant case, plaintiff concedes that Dykes was an independent contractor and that Citizen's retained no control over Livingston on the job. Therefore, although it is theoretically possible for Livingston to have had two employers who retained controls, plaintiff does not so argue.

■ On the other hand, defendant does argue that plaintiff was sufficiently controlled by Citizen's as to be immune from suit. We believe the record, however, as it was before the trial court, supports plaintiff here. We do not believe Citizen's retained sufficient control over Livingston as to be his statutory employer,[1] thus immune from suit.[2] We therefore proceed to plaintiff's second contention.

■ The second issue is whether plaintiff has a cause of action in tort against defendant. The Arizona courts have inquired into this area generally and have concluded that an injured employee of an independent contractor can sue the general employer only under the provisions of the Restatement (Second) of Torts §§ 414 or 344 and its commonlaw terms. Section 414 creates a duty of care for the general contractor when he retains control over the work. Welker v. Kennecott Copper Co., 1 Ariz.App. 395, 403 P.2d 330 (1965). Section 344 covers a landowner's liability to invitees for hidden defects. Jones, infra.

The decision to limit liability to these two areas was determined after presentation of more numerous theories. Welker, supra. That the potential scope of liability is broad was recently reaffirmed in German v. Mountain States Telephone and Telegraph Co., 11 Ariz.App. 91, 462 P.2d 108 (1969), wherein the court pointed out that numerically, those duties imposed by the Restatement are large, deriving primarily from the contractor's various statuses. He can be sued because he controls some detail of the job; he can be sued because he is a principal or because he is a landowner. The ultimate question usually is the degree and status involved.

Arizona cases, however, have reduced liability to the two areas, and proceeded to delineate them even further. For example, in Chesin Construction Co. v. Epstein, 8 Ariz.App. 312, 446 P.2d 11 (1968), this court held that mere general supervisory control over the job by a general contractor is not enough control as a matter of law to create a tort action under § 414. And in E. L. Jones Construction Co. v. Noland, 105 Ariz. 446, 466 P.2d 740 (1970), the Arizona Supreme Court delineated the landowner's duty as to hidden defects, § 344, citing a Washington case and Gerrard v. Fricker, 42 Ariz. 503, 27 P.2d 678 (1933).

■ In the instant case, Dykes and crew were hired to repair a dangerous condition. In the defendant's answer to plain-

1. Plaintiff did concede at oral argument that had Dykes not been covered by Workmen's Compensation, Livingston could have obtained it through Citizen's, but we do not believe we are bound here by that admission.

2. By stipulation, it was clear to the trial court that wages, hiring of members of the crew, job order, all were controlled by Dykes.

tiff's interrogatories, it is asserted, without contradiction, that the entire crew was warned of the hot wires. Plaintiff claims issues of fact as to liability arose under both restatement provisions, asserting essentially that Citizen's held both the status of a general contractor and a landowner by virtue of his easement in the power right of way. Primarily, she contends the questions of defendant's duty as a landowner to warn of hidden dangerous defects and its breach of that duty should have gone to the jury.

We have read the *Jones* case thoroughly and believe our Supreme Court has spoken for the facts of the instant case. The Court stated:

" 'Although the owner is under a duty to furnish reasonable protection against hidden dangers known, or which ought to be known to him and not to the contractor or his servants, this duty extends only to latent dangers which the contractor or his servants could not reasonably have discovered and of which the owner knew or should have known' * * * " 466 P.2d at 749.

We cannot imagine that a subcontractor who is specifically hired to repair a dangerous condition can complain that this same dangerous condition was a latent defect he was not warned against. Especially is this true here when the facts before the lower court showed plaintiff was in fact warned on the jobsite and this has not been controverted.

We therefore conclude that while plaintiff may have had a right to sue defendant, no cause of action was presented against defendant and the trial court properly granted summary judgment. In deference to the dissent, we believe a trial court may grant summary judgment for reasons not specifically enumerated by the petitioning party, if to do so avoids the futility of a trial.

Judgment affirmed.

HOWARD, C. J., concurs.

NOTE: Judge JAMES D. HATHAWAY having requested that he be relieved from consideration of this matter, Judge JOHN A. McGUIRE was called to sit in his stead and participate in the determination of this decision.

McGUIRE, Superior Court Judge (dissenting).

The sole ground of the motion for summary judgment, as it appears in the abstract, is that the defendant is immune from suit under A.R.S. § 23–902, subsec. B and § 23–906. Nothing is said about questions of negligence, landowner liability, etc. None of the stipulated facts relate to any question of negligence. There is not enough in the record to show these matters clearly. I would, therefore, not consider them but pass only on the "statutory employer" question.

The majority opinion states (though plaintiff conceded at oral argument that Livingston could have obtained Workmen's Compensation through Citizen's, if Dykes had not been covered) that Citizen's did not retain sufficient control over Livingston to be his statutory employer. Hence the majority does not reach the questions, some constitutional, that would be involved were it once determined that Citizen's was a statutory employer. There is no purpose in a dissenting judge researching and writing upon questions the majority rules are not even involved.

If Citizen's was not a "statutory employer" the judgment should be reversed.

Rehearing denied.

McGUIRE, J., dissents.