820 P.2d 322

**Donald MADERS, Plaintiff/Appellant,**

v.

**ESTES COMPANY and Estes Development Company, Defendants/Appellees.**

**No. 2 CA-CV 90-0301.**

Court of Appeals of Arizona, Division 2, Department B.

May 30, 1991.

As Corrected July 26, 1991.

Review Denied Nov. 19, 1991.*

nation of this matter.

Rabinovitz & Associates, P.C. by Bernard I. Rabinovitz, Tucson, for plaintiff/appellant.

Bury, Moeller, Humphrey & O'Meara by David C. Bury and Marshall Humphrey, III, Tucson, for defendants/appellees.

JAMES C. CARRUTH, Superior Court Judge.**

Plaintiff Donald Maders appeals from the trial court's granting of summary judgment in favor of defendant Estes Development Company (Estes), in this negligence action. For the reasons set forth below, we affirm.

## FACTS

Viewed in the light most favorable to appellant, *Hill–Shafer Partnership v. Chilson Family Trust*, 165 Ariz. 469, 472, 799 P.2d 810, 813 (1990), the facts are as follows. Donald Maders was injured on October 31, 1988, when he fell through a hole in the roof of a building under construction which was owned by Estes and located at the Tucson Marketplace Project (the project).

Estes entered into an agreement with Diversified Design on June 10, 1988, wherein Diversified became the general

contractor for the project. According to its contract with Estes, Diversified was an independent contractor, fully responsible for and in control of the project, including the hiring of whatever subcontractors were necessary to complete the job. Diversified retained Roberts Roofing Company (Roberts) as an independent subcontractor to perform roofing work at the project. Maders, employed as a roofer by Roberts, was working on Building F, one of several buildings at the project, when the accident occurred.

Estes had also contracted with Lyons Roofing Consultants, Inc. (Lyons) to monitor the progress of the roof construction on the project. The terms of this contract provided that Lyons would conduct a pre-job conference, two unannounced spot inspections, and a final inspection. Lyons was also responsible for providing Estes with a punch list based upon the final inspection.

According to the affidavit of Edward Butchart, Diversified's supervisor on the project, neither Estes nor any representative of Estes, was ever involved in the day-to-day construction details of the project. Butchart stated further that Estes had no control over the purchase or supply of any roofing materials used by Roberts or the scheduling of any work performed by Diversified for its subcontractors.

Stephen Wadding, Lyons' roofing consultant, described his duties to include overseeing the roof construction as the owner's representative to make sure that things were being done properly, but that he had no responsibility for supervising personnel. When Waddings observed a problem in the roof construction according to the specifications or manufacturer's guidelines, he would bring it to the attention of the roofing foreman and notify Estes, fully aware that Estes could ask to have the problem corrected or left as is.

Prior to the installation of the roof on Building F, the carpenters installed the deck, a plywood covering, over the roof

** A Judge of the Pima County Superior Court authorized and assigned to sit as a Judge on the Court of Appeals, Division Two, pursuant to

Arizona Supreme Court Order filed July 25, 1990.

**460**

skeleton. The hole that Maders fell through was approximately 30 inches by 46 inches and was cut into the southeast corner of the roof for the installation of the roof hatch which was designed to provide future roof access from inside the building. The uncontroverted evidence was that the hole was covered with a sheet of plywood or the hatch itself several days before the accident when the roof was last inspected by Wadding, but the hole was found uncovered on the morning of Maders' fall. Roberts began working on the roof about October 28, 1988, and the evidence shows that no other contractors were working on the roof between October 28 and October 31, the day of the accident.

## PROCEDURAL HISTORY

On May 11, 1989, Maders filed a complaint against Diversified, alleging negligence. On August 17, 1989, Maders filed an amended complaint naming Estes as an additional defendant. On June 29, 1990, Estes filed a motion for summary judgment contending that it owed no duty to Maders. Following oral argument, the trial court granted summary judgment in favor of Estes. Maders then filed this appeal.

## ISSUES ON APPEAL

Maders argues that genuine issues of material fact exist which preclude summary judgment in favor of Estes. Specifically, Maders argues that material facts exist which tend to prove that (1) Estes is liable under various theories because it retained control of the work and (2) Estes, as principal, is liable for the negligence of its agent, Lyons Roofing, under the doctrine of respondeat superior.

## DISCUSSION

In reviewing summary judgment, this court views the evidence in the light most favorable to the party opposing the motion, and all favorable inferences fairly arising from the evidence must be given to the opposing party. *Hill–Shafer Partnership,* 165 Ariz. at 472, 799 P.2d at 813; *Wisener*

*v. State,* 123 Ariz. 148, 149, 598 P.2d 511, 512 (1979). Summary judgment is appropriate where "the claim or defense ha[s] so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme School v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). The moving party must be entitled to judgment as a matter of law. *Gulf Ins. Co. v. Grisham,* 126 Ariz. 123, 124, 613 P.2d 283, 284 (1980); *Auto–Owners Ins. Co. v. Moore,* 156 Ariz. 184, 185, 750 P.2d 1387, 1388 (App.1988).

### Retained Control

Maders argues that Estes is liable under various theories because it retained control of the work on the premises. In Arizona, the general rule for independent contractor cases is that Estes, as employer, is not liable for the negligence of the contractor unless it has been independently negligent, as by improper selection of the contractor or in some other manner. *Ft. Lowell–NSS Limited Partnership v. Kelly,* 166 Ariz. 96, 101, 800 P.2d 962, 967 (1990); *E.L. Jones Construction Co. v. Noland,* 105 Ariz. 446, 454, 466 P.2d 740, 748 (1970). *See* Restatement of Torts (Second) §§ 410 through 415 (1965). As the supreme court has noted, however, "[m]any exceptions to the rule of nonliability have now been recognized so that even where the employer has not been personally negligent, he may be vicariously liable for the contractor's negligence." *Ft. Lowell,* 166 Ariz. at 101, 800 P.2d at 967. In this case, Maders argues that several exceptions to the general rule are raised by the facts, making summary judgment inappropriate. We nevertheless find that none of the exceptions apply to this case for the simple reason that there is no evidence in the record that Estes, or Estes through Lyons, retained control over the work.

We turn first to the language of the contract between Estes and the general contractor, Diversified. Article 29, subheaded "INDEPENDENT CONTRACTOR," states that the contractor "shall be deemed an independent contractor and not

an agent or employee of owner," in performing its obligations under the contract. The clause gives Diversified "exclusive authority to manage, direct, and control the work." Estes, it states, is only interested "in the results obtained," not in "the methods used" by the contractor in achieving the results.

Under the special provisions to the contract, the contractor's responsibilities were spelled out as follows:

B. He alone shall be responsible for the safety, efficiency, and adequacy of his plant, applicants, and methods, and for any damage which may result from their failure or their improper construction, maintenance or operation.

Thus, contractually, all control over the project was given to the general contractor, Diversified. While significant, this contractual language, standing alone, would not completely answer the question of whether the general rule applies that Estes, as employer, was not liable for Maders' injury. Section 414 of the Restatement states:

One who entrusts work to an independent contractor, but who retains control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

All of the various theories for finding Estes liable argued by Maders turn, in essence, on a finding that Estes retained control of the work. But, as Comment c to this section of the Restatement states, and as recognized by a number of Arizona cases:

(c) in order for the rule stated in this section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, *or to*

*prescribe alterations or deviations.* Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to its methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way. (Emphasis added.)

Thus, in *Sullins v. Third and Catalina Const. Partnership*, 124 Ariz. 114, 602 P.2d 495 (App.1979), the court held:

The right to program or direct the sequence of the work or reserving the right to prescribe changes or alterations does not give defendant the right to control the method or manner of doing the work. *German v. Mountain States Telephone & Telegraph Co.*, 11 Ariz. App. 91, 462 P.2d 108 (1969).

124 Ariz. at 119, 602 P.2d at 500.

In a thorough analysis of the major cases on the issue of retained control, the court of appeals in *Reber v. Chandler High School District No. 202*, 13 Ariz.App. 133, 474 P.2d 852 (1970), summarized the law in this area as follows:

These cases all stand for the principle that liability for negligent exercise of retained supervisory powers can attach only when there is a showing that a *duty* has been created by the reservation of " * * * the right to exercise day-by-day control over the manner in which the details of the work are performed. * * " [Citation omitted.] As stated in *German v. Mountain States Telephone & Telegraph Co., supra,* the retained supervisory controls must give the defendant control over the *method or manner of doing the details of the work* over and above the supervision and the inspection rights generally reserved to make certain that the *results obtained* conform to the specifications and requirements of the construction contract.

(Emphasis supplied.) 13 Ariz.App. 133, 474 P.2d at 854. *See generally E.L. Jones Construction Co.*, 105 Ariz. at 454, 466 P.2d at 748; *Chesin Construction Co. v. Epstein*, 8 Ariz.App. 312, 446 P.2d 11 (1968); *Fluor Corporation v. Sykes*, 3

Ariz.App. 211, 215, 413 P.2d 270, 274 (1966).

In reviewing the evidence presented to the trial court in this case, we find nothing to indicate that Estes retained "the right to exercise day-by-day control over the manner in which the details of the work are performed. *Reber*, 13 Ariz.App. at 135, 474 P.2d at 854. With respect to the contract, as we have already stated, Diversified had "exclusive authority to manage, direct, and control the work." Estes was only interested in the "results obtained" from the work, not "the method used" by Diversified in achieving the results. Diversified "alone" assumed responsibility for "safety" of the "methods" used on the job site, and for "any damage" resulting from "improper construction, maintenance or operation." As the court of appeals stated, in the recent case of *Easter v. Percy*, 168 Ariz. 46, 49, 810 P.2d 1053, 1056 (Ct.App. 1991):

> Here, the defendants had no contractual responsibility for safety precautions, did not undertake to exercise any control for the sake of safety, contractually disavowed any such role, and had no contractual right to stop work which was proceeding in an unsafe manner. The plaintiff cannot look to the contract to establish liability.

Estes' contract with Diversified clearly shows that Diversified had full responsibility for supervision and safety of the project. Therefore, unless Lyons, by express contract or through its conduct, acquired responsibility for supervision and safety of the project, Estes cannot be held liable for Maders' injuries.

We find no express assumption of responsibility under the terms of Lyons' contract. It is undisputed that the contract provided for Lyons to make two unannounced spot inspections at the worksite, one announced inspection, and a pre-job conference. The inspections on October 14 and 27, and December 14, occurred over the span of two months. The injury to Maders took place on October 31, four days after Lyons' consultant Wadding's second visit to the worksite. Wadding was there-fore neither present at the time of the injury nor was he contractually obligated to be present on the day of Maders' injury. The evidence also clearly shows that Estes contacted Diversified directly by letter to have changes made upon Wadding's suggestions following his inspections. Diversified's supervisor, Ed Butchart, by affidavit, stated that Estes did not have day-to-day control.

While Maders' expert witness, Rick Hunsacker, a roofing consultant, stated that a roofing consultant should provide day-to-day control over the work, that was not what Lyons' contract provided for in this case. The contract was consistent with Estes' generally recognized right as an employer to supervise and inspect to make certain that the results obtained would conform to the specifications and requirements of the construction contract. *Reber*, 13 Ariz.App. at 136, 474 P.2d at 855.

Likewise, there is no evidence in the record to indicate that Lyons' actions amounted to a voluntary assumption of responsibility for supervision and safety of the roofing portion of the project. Given these facts, we decline to extend liability under a theory of retained control by Estes. As the court stated in *Pruett v. Precision Plumbing, Inc.*, 27 Ariz.App. 288, 554 P.2d 655 (1976):

> [T]o permit recovery by employees of subcontractors from general contractors and owners who merely retain the right to control only the end result of the work, and perform their common law duty to keep the premises safe for invitees would circumvent and frustrate the purposes of the Arizona Workmen's Compensation Law.

27 Ariz.App. at 293, 554 P.2d at 660.

As for Maders' assertion that Lyons was negligent in not requiring that the roof hatch be installed after it inspected the roof, there is no evidence in the record that plywood was not sufficient to safely cover the hole in the roof. It is uncontroverted that the plywood, if not the hatch itself, was covering the hole at some point prior to the day of the injury. From at least October 28, the point in time when the roof

was turned over to the roofing workers, to the morning of October 31, the roofers were the only employees known to be using the roof.

Maders argues that the fact that the hatch was included in the specifications may indicate a failure on Lyons' part with respect to its contract to monitor the roofing work for Estes. There is, however, no evidence that any such oversight by Lyons created a danger to the roofing employees. In Maders' own opposition to the motion for summary judgment, language was quoted from a deposition of Lyons' employee Wadding, that "... the roofers would probably be moving that piece of plywood as they worked right in that area.... [T]hey would, like I say, even if it was a roof hatch, they would tend to move that as they worked right in that area to get the plywork down and install the roof hatch on the finished plywork." Thus, Maders concedes that even if a roof hatch had been installed over the hole, it would likely have been removed. There is no evidence in the record suggesting otherwise.

Further, Lyons had no duty to observe whether the hole was covered or not since its agents were not on the site on a day-to-day basis. The evidence indicates in any event that the purpose of the roof hatch was to provide access to the roof in the future. It did not serve strictly a safety purpose and there is no evidence in the record to indicate that covering the hole with plywood in the interim is not an adequate safety precaution.

Finally, with respect to the changes in the work suggested by Lyons, these changes regarded plans and specifications, and there was no indication that these changes resulted in Maders' injuries.

### Liability Under the Doctrine of Respondeat Superior for the Negligence of Lyons Roofing

Maders argues that Estes and Lyons entered into an express agency relationship for which Estes can be held liable for the negligent acts of its agent. Generally, agency may be proved by direct evidence of an express contract between the principal and agent or by proof of facts implying such a contract or its ratification. *Corral v. Fidelity Bankers Life Ins. Co.,* 129 Ariz. 323, 326, 630 P.2d 1055, 1058 (App.1981). Where an agency relationship does exist, a principal is liable for the negligent acts of its agent which were directed or authorized by the principal. *Nava v. Truly Nolan Exterminating of Houston, Inc.,* 140 Ariz. 497, 499 n. 1, 683 P.2d 296, 298 n. 1 (App.1984). Assuming arguendo that Lyons was the representative of Estes, the record fails to show any evidence that Lyons' actions amounted to negligence sufficient to create liability for Maders' injuries. As has been discussed above, whether or not Lyons acted as a representative for Estes, that representation was related to Estes' generally recognized rights "to inspect and supervise to ensure the proper completion of the contract." *E.L. Jones,* 105 Ariz. at 454, 466 P.2d at 748. As Maders himself points out, Wadding stated that his function was not to "supervise the men" but rather simply to act as "the owner's representative to make sure that things are being done properly." Lyons stated that his job was to determine whether any of the roofing work deviated from the specifications or the manufacturers' guidelines.

The record indicates that Wadding acted consistently with Lyons' obligations under the contract. Any failure on his part to point out, according to the plans and specifications, the lack of the roof hatch in place, has not been shown to have been the cause of Maders' injuries as plywood was in place and covered the hole prior to the day of the injury. Thus, Maders' agency theory does not help him.

### CONCLUSION

The trial court properly granted summary judgment in favor of Estes.

FERNANDEZ, C.J., and HOWARD, J., concur.